**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| LUIS ANGEL HEREDIA CRESPI, LYNETTE DAVIS, and MARTIN FORERO, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 8:25-cv-02245-WFJ-NHA |
| | ) | |
| v. | ) | |
| | ) | |
| BAYCARE HEALTH SYSTEM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS**
**CLASS ACTION COMPLAINT AND MEMORANDUM OF LAW**

BayCare Health System, Inc. ("BayCare") moves this Court to dismiss the Class Action

Complaint pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure because

Plaintiffs lack Article III standing and fail to state a claim upon which relief may be granted.

## I.   INTRODUCTION

BayCare is a non-profit healthcare organization that operates healthcare facilities

throughout Florida. Plaintiffs allege that BayCare's use of Google tracking technologies on its

website resulted in unauthorized interceptions of their electronic communications. Plaintiffs'

Complaint contains much speculation but few facts. It alleges conjecture and hypothetical harm

rather than concrete, traceable injury, and it fails to state any viable cause of action.

Plaintiffs lack Article III standing because they have not alleged any injury in fact traceable

to BayCare's conduct. The Complaint identifies no actual, tangible, or particularized harm suffered

by any Plaintiff. Instead, it devotes multiple pages to alleged tracking activity that is wholly

untethered to anything Plaintiffs did on BayCare's website. Plaintiffs' vague and conclusory

allegations fall short of the injury-in-fact requirement and are not fairly traceable to BayCare.

1

Even if Plaintiffs had standing (they do not), their claims fail as a matter of law. Their statutory claims fail because Plaintiffs have not alleged a reasonable expectation of privacy. Their breach of confidence claim fails because Plaintiffs do not allege the existence of a confidential relationship with BayCare or that BayCare disclosed their personal information. Their invasion-of-privacy claim fails because Plaintiffs do not allege an intrusion into their private quarters that is highly offensive to a reasonable person. Their implied contract claim fails because Plaintiffs do not allege that any enforceable contract was formed. Finally, their unjust enrichment claim fails because it cannot rest on alleged tortious conduct, and Plaintiffs do not allege how BayCare was enriched. Plaintiffs' Complaint should be dismissed in its entirety.

## II.      FACTUAL BACKGROUND

BayCare is a nonprofit healthcare organization that operates medical facilities throughout Florida. Compl. ¶ 10. BayCare maintains an informational website at https://baycare.org. *Id*. ¶ 1. Plaintiffs allege that BayCare implemented two Google-owned technologies—Google Analytics and DoubleClick—on its website and thereby "procure[d]" Google to intercept electronic communications from website visitors. *Id*.

Plaintiff Crespi alleges that he used BayCare's website "for approximately three years" and "within the last year" to "seek physicians, specifically rheumatologists, to treat arthritis and other ailments." *Id*. ¶ 81. He further alleges that, after visiting the website, he "observed advertisements for products or services related to his medical conditions." *Id*. Crespi does not allege that he ever received healthcare services from BayCare. *See id*.

Plaintiff Forero alleges that he used BayCare's website "for years," including most recently in March, to find and obtain "general medical treatment" and locate a primary care physician. *Id*. ¶ 82. Forero does not allege that he ever received healthcare services from BayCare. *See id*.

Plaintiff Davis, the only Plaintiff claiming to be a BayCare patient, alleges she has used BayCare's website for more than ten years, through May 2025, to locate facilities and physicians and to schedule appointments. *Id.* ¶ 83. She asserts that she disclosed her medical conditions and symptoms while using the website. *Id.*

All three Plaintiffs allege they accessed BayCare's website from their mobile phones, but do not identify the type of phone, operating system, or browser used. *See id.* ¶¶ 81–83. Plaintiffs likewise do not identify any specific web pages they visited or that the Google technologies were present on those pages. No plaintiff claims to have used the website's search bar or to have conducted any of the searches or actions reflected in the "Examples of Personal Data Collection and Disclosure on the BayCare Website" section of their Complaint. *Compare id.* ¶¶ 56-71, *with id.* ¶¶ 81–83.

The Complaint includes several screenshots purportedly tied to BayCare's website (Compl. ¶¶ 57–60, 62, 64–66, 68–69), but Plaintiffs do not allege that any of these screenshots reflect their own experiences. For example, the Complaint shows an "example of search results when 'diabetes' is entered into the 'Find a Doctor' search bar" (*id.* ¶ 57), but none of the Plaintiffs alleges having used that feature, having that medical condition, or searching for the term "diabetes." The Complaint also includes a screenshot of BayCare's website menu showing a link to the "Cancer Institute" page and another purporting to show information allegedly "intercepted" by Google from visits to that page. *Id.* ¶¶ 64–65. But, none of the Plaintiffs alleges ever visiting that page, having cancer, or that their information was intercepted as depicted.

## III. LEGAL STANDARD

Article III standing to sue is a limit on subject-matter jurisdiction. The plaintiff bears the burden of establishing standing. *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016). "[A] plaintiff

must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Edgerton v. City of St. Augustine, Fla.*, No. 3:20-cv-941-BJD-PDB, 2023 WL 4687563, at \*16 (M.D. Fla. Jan. 31, 2023) (quoting *Town of Chester v. Laroe Est., Inc.*, 581 U.S. 433, 434 (2017)).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A "formulaic recitation" of the elements of a claim does not suffice, and a court cannot sustain a claim if it tenders "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678, 681 (quoting *Twombly*, 550 U.S. at 557).

## IV.    ARGUMENT

### A.    Plaintiffs lack Article III standing to sue BayCare.

Before addressing the merits, this Court must determine whether Plaintiffs have Article III standing to sue BayCare. Plaintiffs must show that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo,* 578 U.S. at 338. No Plaintiff alleges an injury in fact fairly traceable to BayCare's alleged use of Google technologies on its website.

#### 1.    *Plaintiffs fail to allege an injury in fact.*

To establish an injury in fact, Plaintiffs must allege "an invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, (1992)). A "concrete" injury must be "real, and not abstract," and "particularized" means it must "affect the plaintiff in a personal and individual way." *Id*.

The Complaint lacks plausible allegations of a concrete and particularized injury. Plaintiffs do not allege which pages of BayCare's website they visited, what information was allegedly

4

intercepted, or how they were harmed. Only Crespi alleges any semblance of a downstream effect of using the site, claiming that he later saw "advertisements for products or services related to his medical conditions." Compl. ¶ 81. But Crespi does not allege that viewing these ads caused him any harm. Forero and Davis do not allege any downstream effects. *See Id*. ¶¶ 82–83.

Plaintiffs present several hypotheticals in the Complaint concerning alleged tracking activities on the website, including (1) an "an example of search results when 'diabetes' is entered into the "Find a Doctor" search bar (¶ 57), (2) an example of what is shown if a user clicks on the profile of Dr. Talal Farris from the search results (¶ 59), (3) what is purportedly captured when a user "views the page showing locations of hospitals with surgery centers" or, specifically, the Bardmoor Surgery Center (¶ 62), (4) the ability to visit the "Cancer Institute" page from the "Specialties and Treatments" via a dropdown menu (¶ 64), (5) what is purportedly captured when a user visits "a page about BayCare's 'Lung Cancer Screening Program'" (¶ 66), (6) what is purportedly captured when a user searches "mammogram" (¶ 68), and (7) what is purportedly captured "if a user then clicks to view the 'Hinks and Elain Shimberg Breast Center at St. Joseph's Hospital North' location from the search results" (¶ 69). Not one of these examples reflects Plaintiffs' actual alleged experiences. Nor do the screenshots, which were captured from a desktop browser, reflect Plaintiffs' experiences. Plaintiffs reference only having used their phones to visit BayCare's website. *See id*. ¶¶ 81–83.

Instead of alleging actual injury, Plaintiffs hide behind a "list of horribles" that have or may befall the putative class. *See Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 732–33 (1st Cir. 2016) (no standing where "the complaints offer[ed] only scattered descriptions of generalized harms"). Plaintiffs allege invasion of privacy, loss of data value, chilling effects on healthcare communications, risk of future use, and statutory injury. Compl. ¶¶ 86–95. But even if the

5

Complaint's screenshots and hypotheticals reflected Plaintiffs' individual experiences, these "scattered descriptions of generalized harms" are still insufficient to establish an injury in fact.

### i. Statutory violations alone do not constitute an injury in fact.

Plaintiffs' statutory claims under the Electronic Communications Privacy Act ("ECPA") and the Florida Security of Communications Act ("FSCA") do not confer Article III standing. "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 578 U.S. at 341. "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.*; *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 426–27 (2021) (holding a "bare procedural violation" of a federal statute, without concrete harm, is not an injury in fact).

A statutory violation creates standing only if it "(1) inflicts some separate concrete harm on the plaintiff or (2) creates a material risk of such harm to the plaintiff." *Waters v. Fast AC, LLC*, 60 F.4th 642, 648 (11th Cir. 2023). Plaintiffs have alleged neither a concrete harm nor a future risk of such harm. Even if Plaintiffs could plausibly allege statutory violations (they cannot) those violations alone do not constitute an injury in fact.

### ii. Invasion of privacy is not an injury in fact.

Plaintiffs' alleged "invasion of privacy" (Compl. ¶ 86) does not constitute an injury in fact. Courts routinely reject such allegations as theoretical and too speculative to confer standing. *See, e.g.*, *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 694 (7th Cir. 2015) (finding alleged loss of private information is an "abstract injury" that cannot support standing); *Khan v. Children's Nat'l Health Sys.*, 188 F. Supp. 3d 524, 533 (D. Md. 2016) (finding no standing for "loss of privacy" where the plaintiff failed to identify "any potential damages arising from such a loss").

While courts may look to historical analogs to assess a concrete injury, there is no standing where a plaintiff "completely fails to allege an element essential to the harm set out as a common-law comparator." *Drazen v. Pinto*, 74 F.4th 1336, 1343 (11th Cir. 2023) (citation omitted). Plaintiffs completely fail to allege the essential elements of their invasion of privacy claim: an (1) intrusion (2) into a private place (3) that was highly offensive, and therefore, their alleged loss of privacy is not an injury in fact. *See Delong v. PHE, Inc.*, No. 24-5212, 2025 WL 2447787, at *7 (E.D. Penn. Aug. 25, 2025) (no standing where the alleged conduct at issue did "not rise to the requisite level of a highly offensive intrusion" for intrusion-upon-seclusion claim).

### iii.        "Loss of data value" is not an injury in fact.

Plaintiffs' assertion that they "have been deprived of the economic value of their personal data" (Compl. ¶ 87) does not constitute an injury in fact. Courts consistently reject the theory that personal information has independent monetary value. *See, e.g., Remijas*, 794 F.3d at 697 (finding no standing for "such an abstract injury" where the complaint did not suggest that the plaintiffs "could sell their personal information for value"); *Welborn v. IRS*, 218 F. Supp. 3d 64, 78 (D.D.C. 2016) (same); *Henderson v. Reventics, LLC*, No. 23-cv-00586, 2024 WL 5241386, at *6 (D. Colo. Sept. 30, 2024) (same). And courts routinely reject this damages theory without specific allegations that a plaintiff intended to sell their personal information but could not. *See In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 380 F. Supp. 3d 1243, 1257 (M.D. Fla. 2019) (rejecting theory because the plaintiffs did not allege "that their personal information has an independent monetary value that is now less than it was before the data breach."); *Provost v. Aptos, Inc.*, No. 1:17-CV-02120-ELR, 2018 WL 1465766, at *4 (N.D. Ga. Mar. 12, 2018) (same).

Here, Plaintiffs' conclusory allegations do not explain how their personal information allegedly depreciated by visiting BayCare's website. They do not allege that they tried and failed

7

to sell their personal information, or that they were forced to sell it at a lower price. Nor do they allege that the categories of information referenced in the sources cited in their complaint—such as prescription records or social security numbers—were provided on BayCare's website, much less impermissibly shared or transmitted to third parties. *See* Compl. ¶ 90 n.5 (cited article states "[p]rescription records, blood tests, doctor notes, hospital visits and insurance records are sold to commercial companies"), ¶ 91 n.6 (cited article states "[r]ecords that contain your social security number or mother's maiden name are used for identity theft."). Plaintiffs' speculative assertions that they "have been deprived of the economic value of their personal data" (Compl. ¶ 87) "will not do." *Iqbal*, 556 U.S. at 678.

### iv.        "Chilling effect" is not a cognizable injury.

Plaintiffs' vague assertion that BayCare's conduct "created a chilling effect on digital healthcare communications" (Compl. ¶ 93) lacks any supporting facts. *See Dermer v. Miami-Dade Cnty.*, 599 F.3d 1217, 1220–21 (11th Cir. 2010) (noting the plaintiff "failed to provide the court with anything more than generalizations"). Allegations of a "subjective chill are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972). Plaintiffs' generic assertions of a "chilling effect" do not allege a specific objective harm. This is especially true where, as here, Plaintiffs do not allege they stopped using BayCare's website or, for Davis, sought treatment from a different provider.

### v.        Risk of future harm is too speculative to create an injury in fact.

Plaintiffs' claim of an "ongoing risk" that their information "may be further processed," or "potentially used by additional third parties" (Compl. ¶ 94) is insufficient to establish standing. "[T]he mere risk of future harm, standing alone, does not qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a separate harm." *TransUnion*, 594 U.S. at 436. Plaintiffs allege no facts showing that a risk of future harm caused them any separate harm.

Plaintiffs also fail to allege a sufficient risk of future harm. It is not enough that a future injury might come to pass or is even reasonably likely to happen—the "threatened injury must be certainly impending to constitute an injury in fact." *Clapper*, 569 U.S. 409–10 (quotation omitted); *see also TransUnion*, 594 U.S. at 442 (rejecting that credit reports containing inaccurate personal information may be distributed at some unknown time in the future sufficiently created risk of future harm). Plaintiffs allege only that their personal information "*may be* further processed, combined with other data sources, or *potentially used* by additional third parties." Compl. ¶ 94 (emphasis added). Such allegations do not demonstrate that any injury is "certainly impending."

> 2.   *Plaintiffs have not alleged an injury that is fairly traceable to BayCare.*

Even if Plaintiffs plausibly alleged injury (they have not), they fail to show that any injury is fairly traceable to BayCare. There must be a "causal connection between the injury and the conduct complained of," *Lujan*, 605 U.S. at 560, and a "speculative chain of possibilities" is not enough. *Clapper*, 568 U.S. at 414. The only allegation that could be generously construed as a "harm" is Crespi's claim that he "observed advertisements" after visiting BayCare's website. Compl. ¶ 81. But Crespi does not allege when or where he saw the ads, or any plausible nexus between the ads and BayCare's website. Even if the alleged ads alone constituted a cognizable injury (they do not), Crespi has failed to connect them to BayCare's conduct.

**B.   Plaintiffs fail to state a claim upon which relief can be granted.**

Plaintiffs assert six causes of action: (1) violations of the FSCA, (2) violations of ECPA, (3) breach of confidence, (4) invasion of privacy—intrusion upon seclusion, (5) unjust enrichment, and (6) breach of implied contract. Each claim fails as a matter of law.

> 1.   *Plaintiffs fail to state a claim for violation of the FSCA.*

To state a claim under the FSCA, a plaintiff must allege facts showing (1) an interception of (2) an oral, wire, or electronic communication that was (3) intentionally intercepted, disclosed,

9

or used, in violation of the FSCA. Fla. Stat. § 934.02(3). And "[n]o liability exists unless there is a reasonable expectation of privacy in the underlying communication." *Goldstein v. Luxottica of America, Inc.*, No. 21-80546, 2021 WL 4093295, at *2 (M.D. Fla. Aug. 23, 2021), report and recommendation adopted, 2021 WL 4125357 (S.D. Fla. Sept. 9, 2021) (citation omitted). In interpreting the FSCA, Florida courts look to federal cases construing the Federal Wiretap Act. *See Benessere Inv. Grp., LLC v. Swider*, No. 24-CV-21104, 2024 WL 4652090, *5 (S.D. Fla. Oct. 31, 2024) ("Florida modeled the FSCA after the [Federal] Wiretap Act . . . and the causes of action under each are essentially identical"). Any ambiguities in the statute should be resolved in favor of BayCare. *See Jacome v. Spirit Airlines*, No. 2021-000947-CA-01, 2021 WL 3087860, at *3 (Fla. Cir. Ct. June 17, 2021) ("Even if the court found there was an ambiguity as to the FSCA's scope, the rule of lenity demands that the Court interpret the FSCA in [defendant's] favor.").

### i.        Plaintiffs fail to establish a reasonable expectation of privacy.

A threshold requirement is for Plaintiffs to plead sufficient facts establishing a reasonable expectation of privacy when visiting BayCare's website. They do not. *See id.* at *7. (finding a plaintiff must "plead a reasonable expectation of privacy" and concluding that a "singular conclusory allegation that [plaintiff] had a reasonable expectation of privacy when browsing the Website" was insufficient). Plaintiffs' bare allegation that they "had a reasonable expectation of privacy in the electronic communications they had with BayCare's Website" (Compl. ¶ 114) is precisely the sort of conclusory statement that is insufficient to state a claim. *See id.*; *see also Iqbal*, 556 U.S. at 678 (noting a claim is unsustainable if it tenders "naked assertion[s] devoid of further factual enhancement").

Even if Plaintiffs' conclusory allegations satisfy the federal pleading standards (they do not), they still fail to establish a reasonable expectation of privacy. *See State v. Inciarrano*, 473 So. 2d 1272, 1275 (Fla. 1985) ("A reasonable expectation of privacy under a given set of

10

circumstances depends upon one's actual subjective expectation of privacy as well as whether society is prepared to recognize this expectation as reasonable."). Courts applying Florida law consistently hold that no such expectation exists when a plaintiff voluntarily browses a public website—as Plaintiffs alleged here. *See Goldstein*, 2021 WL 4093295, at *2 (dismissing FSCA claim based on alleged visits to defendant's website because "no liability exists unless there is a reasonable expectation of privacy in the underlying communication"). The Eleventh Circuit similarly recognized that "browsing the open internet" to "traveling along the equivalent of 'public highways.'" *United States v. Taylor*, 935 F.3d 1279, 1284 n.4 (11th Cir. 2019). Simply put, users on a public website have no reasonable expectation of privacy in their interactions with it. Because Plaintiffs fail to allege facts supporting such an expectation, their FSCA claim necessarily fails.

### ii. Plaintiffs fail to establish an "interception."

Under the FSCA, an "interception" is the "aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." Fla. Stat. § 934.02(3). Courts apply "a narrow reading of what constitutes an 'interception' under" the FSCA. *Benessere Inv. Grp.,* 2024 WL 4652090, at *5; *see United States v. Steiger*, 318 F.3d 1039, 1050 (11th Cir. 2003) (noting that "very few seizures of electronic communications from computers will constitute 'interceptions'"). A plaintiff must allege a "contemporaneous acquisition of electronic communications while in flight." *Benessere Inv. Grp.,* 2024 WL 4652090, at *5 (internal quotation marks omitted) (citing *Steiger*, 318 F.3d at 1050). In other words, "an interception of electronic communications must occur contemporaneously with their transmission." *Id.* (citing *United States v. Barrington*, 648 F.3d 1178, 1202 (11th Cir. 2011)).

Plaintiffs fail to plead nonconclusory facts showing that BayCare contemporaneously intercepted their electronic communications in transmission. Instead, they repeat the legal element—asserting that the alleged interception occurred "contemporaneously with their

11

transmission"—without alleging any supporting facts. Compl. ¶¶ 112, 116, 125. As courts applying the FSCA have explained, "allegations without pleading any ultimate facts in support are insufficient to demonstrate that any interception happened contemporaneously with transmission." *Jacome,* 2021 WL 3087860, at *6. Plaintiffs' bare assertions cannot sustain an FSCA claim.

Plaintiffs' own description of the operation of the alleged tracking technologies further undermines their conclusory interception allegations. Plaintiffs allege that BayCare's website uses Google Analytics 4 Tracker and DoubleClick, which they describe as tools that "collect[] various data points about user interactions with a website" and then "transmit[]" this data to Google. Compl. ¶¶ 3, 26, 35. Plaintiffs allege these technologies function via lines of code "embedded" in BayCare's website and that this code "enables the collection of various types of data about the user's interactions with the website, which is transmitted to third-party servers." *Id.* ¶ 17.

These allegations describe two distinct communications: (1) a communication between Plaintiffs' browsers and BayCare's website, and (2) a subsequent, separate communication between Plaintiffs' browsers and the third-party analytics tools. *See* id. ¶¶ 17, 81–83. Under Plaintiffs' theory, any alleged "interception" occurred only *after* the browser first communicated with BayCare's website, and the analytics tools *later* collected and transmitted data about those interactions. This is the opposite of a contemporaneous "in-flight" interception. Applying the required narrow construction of "interception," Plaintiffs' allegations cannot meet the FSCA's definition. *See Benessere Inv. Grp.,* 2024 WL 4652090, at *5; *Schwartz v. ADP, Inc.*, No. 2:21-cv-283, 2021 WL 3172029, at *4 (M.D. Fla. July 26, 2021) (FSCA claim failed where plaintiff did not plausibly allege "any contemporaneous transmission").

      **iii.**      **Plaintiffs fail to allege the "contents" of their communications were intercepted.**

12

The FSCA defines "contents" as "any information concerning the substance, purport, or meaning of that communication." Fla. Stat. § 934.02(7). Courts interpret this definition narrowly to require acquisition of the "essential part" of a communication—the "intended message," "meaning conveyed," or "the thing one intends to convey." *Jacome*, 2021 WL 3087860, at *3 (quoting *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014)). Accordingly, to avoid dismissal, Plaintiffs must plausibly allege that BayCare intercepted "the intended message conveyed by the communication" that revealed "the substance, purport, or meaning of [that] communication." *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1322 (S.D. Fla. 2021) (quoting Fla. Stat. § 934.02(7)). Plaintiffs do not—and cannot—allege that here.

To the contrary, their own factual allegations foreclose any plausible claim that the analytics tools captured the "contents" of a communication. Plaintiffs describe in detail how Google Analytics 4 and DoubleClick allegedly operate. *See* Compl. ¶¶ 22–39. According to Plaintiffs, Google Analytics tracks user "actions" on a website to "gain insights into user behavior and to target them with personalized advertisements." *Id.* ¶ 23. Plaintiffs assert that Google Analytics captures "various data points about user interactions with a website," which it labels "events." *Id.* ¶ 26. Plaintiffs further define these "events" as "*page views, clicks, form submissions, video plays, file downloads, and custom events* defined by the website owner." *Id.* (emphasis added). Likewise, Plaintiffs allege that DoubleClick records similar user "interactions"—such as "page views, clicks, form submissions, [and] video plays"—and categorizes them as "activities" for "advertising and attribution purposes." *Id.* ¶ 35.

None of these alleged data points constitutes the "substance" or "meaning" of a communication. Courts repeatedly hold that such routine, functional information—page views, clicks, navigation patterns, and similar activity—does not reveal the "intended message" of any

communication and therefore does not qualify as "contents" under the FSCA. *See e.g., Goldstein*, 559 F. Supp. 3d at 1321. Plaintiffs' theory falls flat; they describe only the collection of behavioral signals, not the acquisition of any message Plaintiffs sought to convey.

### iv.        Plaintiffs fail to allege what information was intercepted.

To survive dismissal, "[t]he Court must know *what* information was allegedly intercepted to determine *whether* it qualifies as content." *Id.* at 1322. Plaintiffs' vague references to using BayCare's website for general health-related purposes do not specify any "substance" of a communication that was allegedly intercepted, and no Plaintiff describes the content of any message purportedly intercepted.

Crespi allegedly used BayCare's website to "seek physicians, specifically rheumatologists, to treat arthritis and other ailments." Compl. ¶ 81. Forero allegedly used the site to "seek out a general practitioner physician." *Id.* ¶ 82. Davis claims she used the website to "search for locations, search for primary care physicians, and to schedule appointments." *Id.* ¶ 83. These generalized descriptions merely recite the subjects Plaintiffs were researching. They do not identify *what information* was allegedly transmitted, how any searches were conducted, or what specific communications—if any—revealed the "substance, purport, or meaning" of a message. As *Goldstein* makes clear, "[j]ust because Plaintiff intended to communicate with Defendant's website does not mean his communications revealed any substance." 559 F. Supp. 3d at 1322.

Without factual allegations describing the content of any intercepted communications, Plaintiffs cannot plausibly plead that their interactions with BayCare's public website qualify as "contents" under the FSCA. Courts analyzing similar claims under analogous statutes have reached the same conclusion. *See Doe v. Upperline Health, Inc.*, No. 1:23-cv-01261, 2024 WL 4953503, at *3 (S.D. Ind. Sept. 24, 2024) (finding allegation that the plaintiff "used the Website to search

14

for a podiatrist" insufficient to plead disclosure of protected information); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123, 1130 (S.D. Cal. 2023) (finding use of public website to "research . . . doctors," "look for providers," and "search for medical specialists" insufficient to support wiretap claim). Plaintiffs' assertions are no more specific and thus equally inadequate.

> 2.    *Plaintiffs fail to state a claim for violation of ECPA.*

To state an ECPA claim, a plaintiff must allege that the defendant "(1) intentionally (2) intercepted, endeavored to intercept[,] or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication (5) using a device." *Mohamad v. Central Fl. Tax and Accounting, Inc.*, No. 6:24-cv-23354-JSS-LHP, 2025 WL 2695116, at *5 (M.D. Fla. Sept. 22, 2025) (quoting *Hamilton Grp. Funding, Inc. v. Basel*, 311 F. Supp. 3d 1307, 1314 (S.D. Fla. 2018)). As courts analyze FSCA claims in the same manner as ECPA claims, Plaintiffs' ECPA claim necessarily fails for the same reasons their FSCA claim fails. It also fails for an independent reason: Plaintiffs do not plead any facts showing that BayCare "intercepted" any communication transmitted by Plaintiffs.

> i.    **BayCare cannot intercept communications to which it is a party.**

ECPA is a one-party consent statute. *Ramos v. Delphi Behav. Health Grp., LLC*, No. 21-11218, 2022 WL 1415856, at *1 (11th Cir. May 4, 2022) ("[I]t is lawful for an individual to intercept a communication if he is a party to it."); *see In re Nickelodeon*, 827 F.3d 262, 275 (3d. Cir. 2016) (discussing "one party consent language in the Wiretap Act"). Under this "party exception," no liability attaches where the person intercepting the communication is "a party to the communication" or where "one of the parties to the communication has given prior consent." *T.D. v. Piedmont Healthcare, Inc*., No. 1:23-CV-5416-TWT, 2024 WL 5284883, at *3 (N.D. Ga. Dec. 10, 2024) (quoting 18 U.S.C. § 2511(2)(d)).

15

Courts routinely apply this rule to dismiss ECPA claims premised on alleged web tracking. *See, e.g., Id.* at *4 (dismissing ECPA claim); *In re Nickelodeon*, 827 F.3d at 275 (dismissing ECPA claim because defendant "was either a party to all communications with the Plaintiff's computers or was permitted to communicate with the Plaintiff's computers by Viacom, who was itself a party to all such communications."); *In re Google Cookie Placement Consumer Privacy Litigation*, 806 F.3d 125, 142–43 (3rd Cir. 2015) (dismissing ECPA claim because tracking cookies placed by advertising providers made the advertiser the intended recipient of the electronic transmission); *Allen v. Novant Health, Inc.*, No. 1:22-CV-697, 2023 WL 5486240, at *4 (M.D.N.C. Aug. 24, 2023) ("mere receipt of a communication does not constitute a violation").

Here, Plaintiffs allege that "BayCare has deliberately implemented the third-party Google Analytics Tracker and DoubleClick Tracker in the source code of its Website." Compl. ¶ 50. To the extent Plaintiffs' website interactions constitute "communications" under ECPA, BayCare—indisputably a party to those communications—consented to them. Because one party to the communications consented, the party-consent exception bars ECPA liability.

### ii. The crime-tort exception does not apply to Plaintiffs' claims.

Plaintiffs attempt to avoid ECPA's party-consent exception by asserting that BayCare was not acting under the color of law when it allegedly procured interceptions. *See* Compl. ¶¶ 45, 131. This effort is misplaced. The party exception is inapplicable only where the "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." *Piedmont Health*, 2024 WL 5284883, at *3 (citing 18 U.S.C. § 2511(2)(d)). Courts interpret this crime-tort exception narrowly; the alleged criminal or tortious purpose "must be separate and independent from the act of the recording." *Planned Parenthood Fed'n of Am., Inc. v. Newman,* 51 F.4th 1125, 1136 (9th Cir. 2022). Thus, the relevant inquiry is whether the interceptor's *purpose*—the "intended use" of the

16

information—was itself criminal or tortious, not whether the interception allegedly violated the statute. *Id*. The exception is narrowly construed and only applies where the defendant intends to use the information to "harm" the plaintiff, such as to "blackmail, threaten, or publicly embarrass the recorded party." *United States v. Jiau*, 734 F.3d 147, 152 (2d. Cir. 2013). Plaintiffs' Complaint contains no such allegations.

To the contrary, the Complaint alleges the opposite. Plaintiffs assert that BayCare implemented the tracking technologies to enhance its business operations, describing the alleged benefits as "detailed analytics about Website usage that inform its business and marketing decisions." Compl. ¶ 76. These allegations foreclose any inference that BayCare's purpose was criminal or tortious. To invoke the crime-tort exception, a plaintiff must plead "sufficient facts to support an inference that the offender intercepted the communication *for the purpose of a tortious or criminal act* that is *independent of the intentional act of recording*." *In re Google Cookie Placement*, 806 F.3d at 145 (emphasis added); *see also Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010) (same). Plaintiffs do not meet this standard.

Courts addressing web-tracking allegations routinely reject the crime-tort exception under indistinguishable circumstances. *See Rodriguez v. Google LLC*, No. 20-cv-04688, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021) ("Alleged interceptions fall within the tort or crime exception only where the primary motivation or a determining factor in the interceptor's actions has been to injure plaintiffs tortiously . . . cannot apply where the interceptor's purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money"); *Doe v. Lawrence Gen. Hosp.,* No. 25-CV-10081-NMG, 2025 WL 2808055 (D. Mass. Aug. 29, 2025), report and recommendation adopted in relevant part, No. CV 25-10081-NMG, 2025 WL 2807673 (D. Mass. Sept. 30, 2025) (holding that "the crime-tort exception to the party exception is inapplicable to

Plaintiff's ECPA claim" in pixel case); *McManus v. Tufts Med. Ctr., Inc.,* No. 25-CV-10008-ADB, 2025 WL 2778025, at *4 (D. Mass. Sept. 29, 2025) (same); *Katz-Lacabe v. Oracle America, Inc.*, 668 F. Supp. 3d 928 (N.D. Cal. 2023) (same). Because Plaintiffs plead no facts showing that BayCare acted with a criminal or tortious purpose independent of the alleged interception, their effort to circumvent the party-consent rule fails, and their ECPA claim fails.

### 3. *Plaintiffs fail to state a claim for Breach of Confidence.*

A breach of confidence involves the "unconsented, unprivileged disclosure to a third party of nonpublic information that the defendant has learned within a confidential relationship." *Farmer v. Humana, Inc.*, 582 F. Supp. 3d 1176, 1189 (M.D. Fla. 2022) (quoting *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 932 (11th Cir. 2020)). Thus, a plaintiff must plausibly allege both (1) disclosure of nonpublic information and (2) the existence of a confidential relationship. *Muransky*, 979 F.3d at 932.

#### i. Crespi and Forero fail to allege a confidential relationship.

A confidential relationship exists only "where confidence is reposed by one party and a trust accepted by the other." *Hutson v. Brooks*, 646 So. 2d 276, 277 (Fla. 2d DCA 1994) (quoting *Traub v. Traub*, 102 So. 2d 157, 159 (Fla. 2d DCA 1958)). Plaintiffs assert generally that "[m]edical providers have a duty to their patients" (Compl. ¶ 133), and that they held a "reasonable expectations of privacy in their communications exchanged with BayCare (*id*. ¶ 134). Crespi and Forero do not allege they are, or ever have been, BayCare patients. *See id*. ¶¶ 82–83. They allege only that they browsed BayCare's publicly accessible website. Such passive website use does not create the kind of relationship in which one party "accepts" the other's trust. Because Crespi and Forero allege no patient relationship with BayCare, they fail to plead a confidential relationship.

#### ii. Plaintiffs fail to allege disclosure of confidential information.

18

Plaintiffs also fail to allege that BayCare disclosed any confidential information. They claim only that they used BayCare's website to search for locations and physicians. Compl. ¶¶ 81–83. But browsing history on public-facing web pages does not make such information confidential or protected health information. *See Smith v. Facebook*, 262 F. Supp. 3d 943, 954–55 (N.D. Cal. 2017), aff'd, 745 F. App'x 8 (9th Cir. 2018) (browsing history on a website did not disclose PHI because "[t]hese pages contain general health information that is accessible to the public at large").

Plaintiffs' browsing history on BayCare's public website is no different. Such interactions do not reveal private medical information, do not reflect confidential communications, and do not transform publicly available website activity into nonpublic information for purposes of a breach of confidence claim. Plaintiffs therefore fail to plead the essential elements of disclosure of confidentiality, and their claim should be dismissed.

    4.    *Plaintiffs fail to state a claim for Invasion of Privacy—Intrusion Upon Seclusion.*

Intrusion upon seclusion is an intrusion "physically or electronically ... into one's private quarters." *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003) (quotation omitted). The claim has three elements: (1) a private place, (2) some physical or electronic intrusion into that private place, and (3) the intrusion must be highly offensive to a reasonable person. *Rebalko v. City of Coral Springs*, 552 F. Supp. 3d 1285, 1332 (S.D. Fla. 2020).

    i.    **Plaintiffs fail to allege an intrusion.**

There is no intrusion where the plaintiff voluntarily provides information. *Piedmont Healthcare,* 2024 WL 3972984, at *2. Courts routinely reject intrusion claims based on voluntary website interactions with medical providers. *See id.* ("There is no intrusion upon privacy when a patient voluntarily provides personally identifiable information and protected information to his or her healthcare provider."); *Allen*, 2023 WL 5486240, at *2 (same); *Okash v. Essentia Health*,

No. 23-482, 2024 WL 1285779, at *7 (D. Minn. Mar. 26, 2024) (same). Here, Plaintiffs allege only that they voluntarily browsed and interacted with BayCare's public website. *See* Compl. ¶¶ 81–83. Such conduct cannot constitute an intrusion as a matter of law.

Nor do Plaintiffs' allegations that BayCare shared information with third parties transform voluntary disclosure into an intrusion. It is "[t]he intrusion itself [that] makes the defendant subject to liability." *Cook v. GameStop, Inc.*, 148 F.4th 153, 160 (3d Cir. 2025) (citation omitted). Intrusion requires an affirmative act by the defendant in obtaining the information; it "cannot exist when the information is provided by the plaintiff, even if a defendant later shares the information." *Okash*, 2024 WL 1285779, at *7. Plaintiffs allege no such affirmative act here.

### ii.    Plaintiffs fail to allege intrusion into a private place.

"Florida law explicitly requires an intrusion into a private place and not merely into a private activity." *Pet Supermarket, Inc. v. Eldridge*, 360 So. 3d 1201, 1207 (Fla. Dist. Ct. App. 2023) (quoting *Spilfogel v. Fox Broad. Co.*, 433 F. App'x 724, 727 (11th Cir. 2011)); *see Hammer v. Sorensen*, 824 F. App'x 689, 695 (11th Cir. 2020) (noting that Florida construes intrusion more narrowly than the Restatement and requires intrusion into a private *place*, not simply into personal affairs).

Plaintiffs allege that BayCare "intruded upon the seclusion and private affairs" of website users by employing tracking tools. Compl. ¶ 140. But tracking alleged browser activity on a public website does not involve physical or electronic entry into a private place, and courts routinely reject virtually identical claims. *See W.W. v. Orlando Health, Inc.*, No. 6:24-cv-1068-JSS-RMN, 2025 WL 722892, at *9 (M.D. Fla. Mar. 6, 2025) (dismissing claim where the plaintiff alleged a hospital "intruded into her private quarters because its tracking tools intruded into her web browser conversations with [her] healthcare providers"); *Bradley v. City of St. Cloud*, No. 6:12-cv-37TBS,

2013 WL 3270403, at *4–5 (M.D. Fla. June 26, 2023) (dismissing claim where the defendant allegedly viewed the plaintiff's medical records because plaintiff did "not allege that Defendants intruded into her home or another private place"). Plaintiffs identify no private place into which BayCare allegedly intruded, and their claim fails on this basis alone.

### iii.      Plaintiffs fail to allege a "highly offensive" intrusion.

Even if Plaintiffs plausibly alleged an intrusion into a private place (they did not), the alleged conduct is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Celestine v. Capital One*, No. 17-20237, 2017 WL 2838185, at *4 (S.D. Fla. Jun. 30, 2017). Courts evaluating common web-tracking practices find that such conduct is not "highly offensive." *See In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 294–95 ("[T]he use of [advertising technology] for benign commercial purposes has become so widely accepted as part of Internet commerce that it cannot possibly be considered 'highly offensive.'").

Florida courts equate the "highly offensive" requirement with the "outrageousness" standard for intentional infliction of emotional distress, which requires conduct "beyond all bounds of decency and utterly intolerable in a civilized community." *Hammer*, 824 F. App'x at 695 (quotation omitted); *see also Stasiak v. Kingswood Co-Op, Inc.*, No. 8:11-cv-1828, 2012 WL 527537, at *2 (M.D. Fla. Feb. 17, 2012) (same). Plaintiffs' allegations fall far short. Their alleged "private communications" consist only of routine website browsing to locate physicians and medical facilities. Compl. ¶¶ 81–83. Courts have found far more sensitive information not sufficiently outrageous to support an intrusion claim. *See, e.g., Regions Bank v. Kaplan*, No. 17-15478, 2021 WL 4852268, at *13 (11th Cir. Oct. 19, 2021) (unredacted social security number); *Stasiak*, 2012 WL 527537, at *2 (credit report); *Post-Newsweek Stations Orlando, Inc. v. Guetzloe*, 968 So. 2d 608, 613 (Fla. Dist. Ct. App. 2007) (medical records and attorney communications).

21

Because Plaintiffs allege no intrusion, no private place, and no conduct approaching the level of "highly offensive," the intrusion-upon-seclusion claim fails as a matter of law.

    5.    *Plaintiffs fail to state a claim for Breach of Implied Contract.*

Under Florida law, a breach of implied contract is analyzed under the same principles as a breach of an express contract. *Orthopaedic Care Specialists, P.C. v. Aetna Life Ins. Co.*, No. 9:22-CV-81904, 2023 WL 11944684, at *3 (S.D. Fla. May 8, 2023) (citation omitted). A plaintiff must allege: (1) the existence of a contract, (2) material breach of the contract by the defendant, and (3) damages resulting from the breach of contract. *Id.* A valid contract—express or implied—requires (1) an offer, (2) acceptance of the offer, (3) consideration, and (4) sufficient specification of the essential terms. *N. Broward Hosp. Dist. v. Glob. Excel Mgmt., Inc*., No. 24-61242-CIV, 2025 WL 395753, at *4 (S.D. Fla. Feb. 3, 2025). There must be a "meeting of the minds on all essential terms," and "[i]f there is any essential term upon which agreement is lacking, no meeting of the minds of the parties exists, and a valid and binding contract has not been formed." *Id*.; *Ramirez v. Paradies Shops, LLC*, 69 F.4th 1213, 1221 (11th Cir. 2023). As discussed above, Plaintiffs have not alleged any actual damages, which alone defeats their claim, but their contract claim also fails because they do not plausibly allege the existence of a contract.

Plaintiffs assert only that the parties "entered into implied contracts" when Plaintiffs "provided their sensitive medical information to BayCare." Compl. ¶ 150. This conclusory statement is unsupported by any factual allegations establishing the required contract elements. Plaintiffs do not allege that BayCare made an offer, that Plaintiffs accepted any such offer, that any consideration was exchanged, or that any essential terms were agreed upon. *See id*. Such bare assertions are precisely the type of "naked assertion[s] devoid of further factual enhancement" that "will not do." *Iqbal*, 556 U.S. at 678. Nothing in the Complaint plausibly suggests a meeting of

22

the minds regarding data-privacy terms governing Plaintiffs' voluntary browsing of BayCare's public-facing website. Plaintiffs identify no communication, negotiation, or course of dealing from which an implied contractual promise could reasonably be inferred.

Further, even assuming Plaintiffs had plausibly alleged mutual assent, alleged generalized promises to "safeguard" information do not constitute a contractual commitment by BayCare to refrain from using website analytics tools. Because Plaintiffs have not plausibly alleged the existence of an implied contract, a meeting of the minds on essential terms, or resulting damages, their breach of contract claim fails as a matter of law and should be dismissed.

6.    *Plaintiffs fail to state a claim for Unjust Enrichment.*

"Under Florida law, a claim for unjust enrichment requires that: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant accepted or retained the benefit; and (4) the circumstances are such that 'it would be unequitable for the defendant to retain the benefit without paying fair value for it.'" *Steven L. Steward & Associates, P.A.*, No. 6:20-cv-1083, 2020 WL 5939150, at *2 (M.D. Fla. Oct. 6, 2020) (citation omitted). Plaintiffs' claim fails for two reasons: unjust enrichment cannot be predicated on alleged wrongful conduct, and Plaintiffs fail to allege how BayCare was enriched.

**i.    Unjust enrichment cannot be based on allegations of wrongful conduct.**

Florida law is clear that unjust enrichment cannot rest on alleged tortious or wrongful conduct. *See State Farm Mut. Auto. Ins. Co. v. Lewin*, 535 F. Supp. 3d 1247, 1266 (M.D. Fla. 2021) ("A claim of unjust enrichment may not be predicated on a wrong committed by a defendant."); *Electrostim Med. Servs., Inc. v. Lindsey,* No. 8:11-cv-2467, 2012 WL 1560647, at *4 (M.D. Fla. May 2, 2012) ("Where a plaintiff predicates their unjust enrichment claim on wrongful conduct of a defendant, then the plaintiff's right of recovery, if any, arises from the wrong of the alleged tort rather than unjust enrichment.").

23

Yet Plaintiffs' unjust enrichment claim is based entirely on the same alleged wrong that underlies their FSCA, ECPA, and intrusion-upon-seclusion claims—namely, the supposed unauthorized "interception" of their data. Compare Compl. ¶¶ 145–46 (unjust enrichment), *with id*. ¶ 140 (intrusion upon seclusion), *and id*. ¶ 120 (ECPA). Plaintiffs identify no independent enrichment-based theory of liability separate from these alleged statutory and tort violations. Courts dismiss unjust enrichment claims in precisely these circumstances. *See Lewin*, 535 F. Supp. 3d at 1267 (dismissing claim and noting that "[t]he Court cannot differentiate this wrong from the other torts alleged in this complaint."); *Pop v. LuliFama.com LLC*, No. 8:22-CV-2698-VMC-JSS, 2024 WL 1194485, at \*6 (M.D. Fla. Mar. 20, 2024), *aff'd*, 145 F.4th 1285 (11th Cir. 2025) (same). Because Plaintiffs' theory rests entirely on alleged wrongful conduct, it cannot sustain an unjust enrichment claim.

### ii.   Plaintiffs fail to allege how BayCare was enriched.

Even if their claim was otherwise cognizable, Plaintiffs fail to plead that they conferred any benefit on BayCare. Plaintiffs assert only that "BayCare has received a benefit from Plaintiffs." Compl. ¶ 145. This bare assertion is unsupported by facts explaining the benefit, how BayCare accepted it, or why retaining it would be inequitable.

Plaintiffs do not allege that they provided BayCare with an economic or tangible benefit. Their only allegation is that BayCare purportedly used their website interactions for "business purposes, including marketing and advertising analytics." Compl. ¶ 146. Such vague references to "commercial gain" or "business purposes" are insufficient. *See, e.g., In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. 19-MD-2904, 2021 WL 5937742, at \*18 (D.N.J. Dec. 16, 2021) (finding allegations of general "commercial gain" insufficient); *Shofur LLC v. Fitzpatrick*, No. 1:20-CV-01267-SCJ, 2021 WL 8648884, at \*5 (N.D. Ga. Sept. 8, 2021) (same).

24

Plaintiffs do not allege any facts showing that BayCare profited, received money, or otherwise obtained anything of value from Plaintiffs. Their conclusory allegation that BayCare somehow benefited from their web browsing is insufficient to support an unjust enrichment claim, and their claim should be dismissed.

## V.    CONCLUSION

For the foregoing reasons, BayCare respectfully requests this Court dismiss Plaintiffs' claims.

### LOCAL RULE 3.01(g) CERTIFICATION

I hereby certify that the undersigned counsel conferred with Plaintiffs' counsel regarding this motion on November 20, 2025, by telephone, and Plaintiffs do not consent to the requested relief.

Respectfully submitted this 26th day of November, 2025.

/s/ *Starr T. Drum*_____
Starr T. Drum, Florida Bar No. 0088866
Xeris E. Gregory (*pro hac vice*)
POLSINELLI PC
2000 SouthBridge Parkway, Suite 301
Birmingham, Alabama 35209
Telephone: (205) 963-7136
sdrum@polsinelli.com
xgregory@polsinelli.com

*Counsel for BayCare Health System, Inc.*

### CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2025, I electronically filed the foregoing using the Court's CM/ECF system, which will send notice of such filing to all counsel of record.

/s/ *Starr T. Drum*_____
Starr T. Drum
Florida Bar No.: 0088866

25