UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**LUIS ANGEL HEREDIA CRESPI,**
**LYNETTE DAVIS,** and
**MARTIN FORERO,** individually and on
behalf of all others similarly situated,

Case No. 8:25-cv-02245-WFJ-NHA

Plaintiffs,

v.

**BAYCARE HEALTH SYSTEM, INC.,**
a nonprofit corporation organized under
the laws of Florida,

Defendants.

### PLAINTIFFS' RESPONSE TO MOTION TO DISMISS

Plaintiffs, by and through their counsel of record, submit the following

Response Memorandum of Law, and state:

### INTRODUCTION

This is a case of round pegs fitting cleanly into round holes.  Florida's legislature

passed the Florida Security of Communications Act ("FSCA") to protect residents

from the interception of their communications.  Plaintiffs Luis Angel Heredia Crespi,

Lynette Davis, and Martin Forero (collectively, "Plaintiffs") are Florida residents.

Baycare Health System, Inc. ("Defendant" or "Baycare") procured a third party to

intercept Plaintiff's electronic communications, in violation of the FSCA.

Defendant's reading of the FSCA and its federal corollary, the Electronic

Communications Privacy Act ("ECPA"), would narrow the class of individuals

1

entitled to relief to a pinhole. That may be Defendant's preference, but it is not the law. Defendant's motion to dismiss (the "Motion") should therefore be denied.

## FACTUAL BACKGROUND

Baycare operates a healthcare system across West Central Florida, which includes sixteen hospitals and over 30,000 employees. *See* Compl. ¶ 2. Like most large healthcare systems, Baycare uses both a website and a patient portal, which permit patients and prospective patients to conduct searches for personalized health services, as well as use the portal for services such as paying for services. *Id.*

However, unbeknownst to patients and visitors, Baycare has implemented two tracking technologies in its website, both of which are owned by Google: Google Analytics 4 Tracker and DoubleClick Tracker (the "Trackers"). *Id* at ¶¶ 3, 16-39. These technologies permit Google to intercept a patients search terms inputted into Baycare's website, *and* tie these search terms to their online personal profile. *Id.* at ¶¶ 28, 30, 39, 67. For example, if an individual searches for a "mammogram" on Baycare's website, this information is intercepted by and transmitted to Google. *Id.* at ¶¶ 68-71. If the user then selects a Baycare location for the mammogram, this location is also transmitted to Google. All of this information can then be tied to the user's Google profile, and that user can be personally identified by Google. *Id.*

Plaintiffs in the case at bar each used Baycare's website and submitted their private and personal health information to Baycare, which was then intercepted by the Trackers. *Id.* at ¶ 81-84. At least one Plaintiff, Luis Angel Heredia Crespi, received

2

healthcare advertisements targeted directly towards his ailments, after inputting his information into Baycare's website. *Id.* at ¶ 81.

This is the conduct that Plaintiffs seek to enjoin, and to seek recovery of damages for, from Baycare, on behalf of themselves and the proposed class. A visit to a hospital website should never provide an opportunity to mine a patient's personal data. Obtaining healthcare and caring for oneself is already a stressful affair. Patients should not be further burdened with the concern that their private health information is being intercepted for commercial purposes by multi-billion dollar corporations who do not have their best interests in mind.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 8 requires a complaint to include a "short and plain statement of [a] claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era." *Id.* at 678–79.

When reviewing a motion to dismiss, courts "accept the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff." *Caterpillar Fin. Services Corp. v. Venequip Mach. Sales Corp.*, 147 F.4th 1341, 1346–47 (11th Cir. 2025). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* "A claim is facially plausible if the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

3

defendant is liable for the misconduct alleged." *Id.* The "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

**ARGUMENT**

Defendants Motion to Dismiss (the "Motion") is divided into two sections: Section A, pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(1), where Defendant argues that Plaintiffs lack Article III Standing; and Section B whereby Defendant argues that Plaintiffs have failed to state a claim, and thus the Complaint should be dismissed pursuant to FRCP (12)(b)(6).

**A.     Plaintiffs Possess Article III Standing To Sue Baycare.**

To establish Article III standing, a plaintiff must allege that: (1) he suffered an injury in fact that is concrete; (2) that the injury is traceable to defendant's legal violation, and (3) that the injury would likely be redressed by judicial relief. *Walters v. Fast AC, LLC*, 60 F.4th 642, 648 (11th Cir. 2023). Defendant's Motion attacks elements (1) and (2), and thus they are addressed below.

**1.     Plaintiffs Have Suffered An Injury In Fact.**

An injury in fact may arise in three circumstances: (1) where there are tangible harms, such as physical injury or monetary loss; (2) intangible harms, like "injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts"; and (3) where there is a material risk of future harm if a

plaintiff is seeking injunctive relief. *Green-Cooper v. Brinker International, Inc.,* 73 F.4th 883, 889 (11th Cir. 2023).

Of particular note to this case, state or federal legislatures can confer standing by creating legal rights for plaintiffs. *Id.* Indeed, a statutory violation creates standing so long as it "(1) inflicts some separate concrete harm on the plaintiff or (2) creates a material risk of such harm to the plaintiff." *Id.*

The FSCA states in its legislative finding that one of its primary purposes is to "safeguard the privacy of innocent persons."; and similarly, the ECPA bars the intentional interception of private electronic communications. *See* Fla. Stat. § 934.01 and 18 U.S.C. § 2511(1)(a). Once a defendant invades upon a plaintiff's privacy in violation of these statutes, the damage is done for purposes of assessing Article III standing. *Sanders v. Global Radar Acquistion, LLC*, 2019 U.S. Dist. LEXIS 2457 (M.D. Fla. Jan. 7, 2019) (citing *Warth v. Seldin,* 422 U.S. 490, 500 (1975)). "The actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" *Id.* Defendant, a hospital, cannot invade upon the privacy of its own patients or potential patients, and then seek to hide behind a defense that no real damage was done.

Defendant ignores the actual allegations and precedent on what constitutes a separate concrete harm and a material risk of harm. In *Walters*, relied upon by Defendant, the court found plaintiff's evidence of lost time, money, and peace were sufficient to confer standing to assert claims for statutory violations of the Fair Credit Reporting Act. *Walters*, 60 F.4th at 649. Here, Plaintiffs similarly allege an invasion

of privacy (i.e., a loss of peace), loss of data value and a risk of further use of intercepted data (i.e., a loss of money), and a chilling effect on healthcare communications (i.e., lost time). Further, the Eleventh Circuit decided *Walters* on summary judgment, after discovery was conducted by the parties. The instant Motion is one to dismiss a pleading. The Court therefore must accept all of Plaintiffs' allegations as true. *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). As discussed below, the particular concrete injuries in fact are alleged in this case.

### i.     Defendant's Statutory Violations Give Rise To A Concrete Injury.

Where there is violation of a statute that poses a risk of real harm to a plaintiff, as opposed to a mere procedural violation that poses no real risk to a plaintiff, the statutory violation alone can give rise to a concrete injury and Article III standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016); *Foster v. Santander Consumer United States, Inc.*, 2019 U.S. Dist. LEXIS 135557 (N.D. Ga. May 29, 2019); *Sanders v. Global Radar Acquisition, LLC*, No. 2019 U.S. Dist. LEXIS 2457 (M.D. Fla. Jan. 7, 2019).

In *Sanders,* plaintiff alleged that defendant distributed consumer reports and employment background checks without complying with the Fair Credit Reporting Act's ("FCRA") disclosure and consent requirements. *Id.* at 11-13. The *Sanders* court held that the plaintiff had established a concrete injury for Article III purposes, because the FCRA was enacted to prevent the precise types of harms at issue. *Id.*

Baycare's statutory violations of the FSCA and ECPA at issue in this case pose extremely similar risks. Plaintiffs are not alleging mere technical violations. Rather,

they have alleged that Defendants are intentionally using digital and electronic means to take their private and personal health and medical information, and transmitting it to an outside vendor, Google, without Plaintiffs' knowledge or permission. *See* Compl. ¶¶ 112-117. Thus, these violations of Plaintiffs' privacy and the FSCA and ECPA alone are sufficient to give rise to a concrete injury sufficient for Article III standing.

### ii.    Invasion Of Privacy May Give Rise To A Concrete Injury.

In *Sanders,* the Court held that an invasion of privacy can give rise to Article III standing, following the U.S. Supreme Court's holding in *Spokeo,* 136 S. Ct. at 1549, *Sanders*, 2019 U.S. Dist. LEXIS 2457 at 10-13. Although the *Sanders* decision was assessing a claim under the FCRA, the plaintiff's interests were similar to those of Plaintiffs here: the unlawful dissemination of private information in violation of a statute enacted to protect those interests. *Id.* at 7. The *Sanders* court held that the plaintiff had established a concrete injury as a result of their of privacy violations, since the FCRA, was designed to protect those interests. *Id.* at 13.

The *Sanders* holding is instructive for the case at bar. The FSCA and ECPA were both enacted to protect the privacy of individuals, and Defendant invaded Plaintiffs' privacy by transmitting their private medical information to Google. These statutory violations alone give rise to Article III standing. See *Id.* at FN5 ("Because the Court has determined that invasion of privacy is a sufficient injury to establish constitutional standing, plaintiffs' remaining allegations of harm, including informational injury, deprivation of their ability to contest or discuss with Naples

Hotel Group the content of their consumer reports, and unjust enrichment need not be addressed.")  Accordingly, this argument by Defendant does not have any merit.

### iii.    Loss Of Data Value Is Sufficient To Give Rise To A Concrete Injury.

Where a defendant profits off of a plaintiff's property, or is unjustly enriched through the taking of a plaintiff's property, there is a concrete injury.  *See Havana Docks Corp.*, 484 F. Supp. 3d at 1193; *Luxottica Group S.P.A. v. Beemer & Assocs. III LLC*, 2025 U.S. Dist. LEXIS 48055 (M.D. Fla. Mar. 12, 2025) (citing *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1279 (11th Cir. 2022) (plaintiffs suffered "an injury tantamount to unjust enrichment," which gave rise to standing where defendants profited off of plaintiffs' property)).  This premise is precisely what makes Baycare's conduct so egregious.

Baycare uses embedded software in its website to intercept Plaintiffs' personal, valuable medical information and history, and then it is transmitted to Google, which can use it for marketing and direct advertising.  *See* Compl. ¶¶ 69-71, 81, 146.  Baycare cannot unlawfully mine Plaintiffs' medical data in violation of their privacy rights and then claim the "loss of data" value is not real.  The law states otherwise: where a defendant is unjustly enriched through such a taking, there is a concrete injury.

### iv.    Baycare's Arguments Regarding "Chilling Effects" And "Risks Of Future Harm" Are Immaterial.

Plaintiffs allege that Defendant's conduct of violating their privacy rights undermines patient trust and creates a chilling effect and risks of future harm.  *See* Complaint, ¶¶ 93-95.  While true, these allegations are not the foundation upon which

Plaintiffs claim Article III standing. As discussed *supra,* Plaintiffs demonstrate Article III standing through multiple channels. These additional allegations simply go to harms inflicted upon Plaintiffs and the proposed Classes, and their need for injunctive relief.

### 2. Plaintiffs' Injury Is Fairly Traceable to Defendant's Conduct.

The "fairly traceable" element of Article III standing can be established if the defendant's unlawful conduct is tied to the plaintiff's injury. *See Sanders*, 2019 U.S. Dist. LEXIS 2457 at *13; *see also Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) ("[E]ven a showing that a plaintiff's injury is indirectly caused by a defendant's actions satisfies the fairly traceable requirement."). An injury is fairly traceable to the defendant where the defendant's unlawful conduct impacted the plaintiff's private data or information. *Cravens v. Garda CL Southeast, Inc.*, 2025 U.S. Dist. LEXIS 178343, 20-21 (S.D. Fla. Sep. 11, 2025). An injury is also be fairly traceable to a defendant if the defendant profits from or is unjustly enriched by its unlawful conduct. *See Havana Docks Corp.*, 484 F. Supp. 3d at 1193; *Luxottica Group S.P.A. v. Beemer & Assocs. III LLC*, 2025 U.S. Dist. LEXIS 48055 (M.D. Fla. Mar. 12, 2025) citing *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1279 (11th Cir. 2022).

Here, Plaintiffs have clearly alleged that Baycare caused their injuries. *See* Compl. ¶¶ 72-77; 81-95. Plaintiffs have alleged that Defendants intentionally implemented trackers on its website for the purpose of taking Plaintiff's private medical information, and that private information was transmitted to Google through the

actions taken by Defendant. *Id.* This unlawful conduct was intentional and directly committed by Baycare. *Id.*

In a single, undeveloped paragraph, Defendant states that Plaintiffs have not alleged an injury that is traceable to it. But Defendant merely repackages its injury-in-fact argument, stating that Plaintiffs have failed to sufficiently allege "harms." Motion at 9. Again, Defendant ignores the actual allegations and standard of review applicable at the motion to dismiss stage. The Court must accept Plaintiffs' allegations as true, and Plaintiffs have alleged in more than sufficient detail how Defendant's interception of their personal health information harmed them.

Specifically, Plaintiffs allege that Defendant took their personal health and medical information through the use of Google trackers, for the purpose of monetizing and profiting from said data, and for its use in marketing. *See* Compl. ¶¶ 44-45, 89-92. At least one Plaintiff experienced proof of these unauthorized disclosures when, after inputting their confidential and medical information and history into Baycare's website, they subsequently began receiving direct advertisements targeted toward their ailments or conditions. *See* Compl. ¶ 81. This taking of and profiting from Plaintiffs' sensitive and private medical data violates the FSCA, the ECPA, and is a form of unjust enrichment giving rise to a concrete injury traceable to Baycare. *See Havana Docks Corp.*, 484 F. Supp. 3d at 1193.

In sum, Plaintiffs have alleged multiple, concrete and particularized injuries traceable to Defendant, including but not limited to substantive violations of the FSCA

and ECPA. That Defendant has firmly planted its head in the sand does not erase the well-pleaded allegations or Plaintiffs' right to bring suit.

## B.   Plaintiffs Have Stated Claims For Relief.

Plaintiffs have alleged claims for: (1) violations of the FSCA; (2) violations of the ECPA; (3) breach of confidence; and; (4) unjust enrichment. [1]

### 1.   Plaintiffs Have Sufficiently Alleged An FSCA Violation.

"The FSCA prohibits intentionally intercepting, endeavoring to intercept, or procuring any other person to intercept or endeavor to intercept any electronic communication." *W.W. v. Orlando Health, Inc.* ("*W.W.*"), 2025 U.S. Dist. LEXIS 40038 at 7 (M.D. Fla. Mar. 6, 2025) *citing* Fla. Stat. § 934.03(1)(a). The FSCA defines "intercept" as "the aural or other acquisition of the contents of any electronic communication through the use of any electronic, mechanical, or other device." *Id.* (quoting Fla. Stat. § 934.02(3)) (alteration adopted). "It further defines 'contents' as 'any information concerning the substance, purport, or meaning of that communication.'" *Id.* (quoting Fla. Stat. § 934.02(7)). "[T]he FSCA was designed to protect precisely the information at issue in this case—private medical information." *Id.* at *4.

The FSCA explicitly provides for civil remedies, including but not limited to: injunctive relief; actual damages, or statutory damages of at least $1,000.00, whichever are higher; punitive damages; and attorneys' fees and costs. Fla. Stat. Ann. § 934.10.

---

[1] Plaintiffs are voluntarily dismissing their invasion of privacy – intrusion upon seclusion and breach of implied contract claims (Counts IV and VI, respectively).

Plaintiffs stated an FSCA claim. Plaintiffs alleged that Defendant deployed the Trackers on its website, and that these Trackers "intercept[ed]" and transmitted plaintiffs' sensitive health information without their consent. *See* Compl. ¶¶ 3-4, 20-21, 30-39, 49-86, 92-94, 108-119. These transmissions contained "content," including the specific types of medical services Plaintiffs sought. *Id.* ¶¶ 3, 39-41, 50-71, 81-84, 112. Along with this sensitive medical information, the Trackers also transmitted information from set cookies that could be used by Google to identify plaintiffs and associate them with their private health information. *Id.* ¶¶ 27-30, 36, 52, 56-57, 60-71. Google uses this intercepted information to "personalize content and ads that one sees on Google's and its partners' sites" and to build "comprehensive profiles of individuals that can be used for targeting advertisements and other commercial purposes." *Id.* ¶ 31.

The *W.W.* Court found allegations nearly identical to those pled here sufficient to state an FSCA claim. In *W.W.*, the court assessed a putative class action claim against a hospital that implemented tracking tools on its website. *W.W.,* 2025 U.S. Dist. LEXIS 40038 at 4-6. That hospital then used those web tracking tools to gather private health information from its patients, and then it transmitted that data to Google and Facebook for marketing purposes. *Id.* The Plaintiff in *W.W.* experienced similar negative consequences as at least one Plaintiff in the case at bar. *Id.* Specifically, the *W.W.* plaintiff alleged that she received advertisements on Facebook for products and

12

services related to her medical conditions that were communicated to the hospital in *W.W. Id.* at 17; *see also* Complaint ¶ 81.

The *W.W.* Court held that the plaintiff had sufficiently pleaded a claim under the FSCA. *W.W.*, U.S. Dist. LEXIS 40038 at 7-19. Specifically, the Court found that where a patient or prospective patient inputs search terms relating to their health or medical conditions into the hospital's website; such information is "content" as that phrase is used in the FSCA and thus in need of protection; and the transmission and disclosure of such content to such entities as Google or Facebook is done in violation of the FSCA. *Id.* at 11.

The factual scenario in *W.W.* is nearly identical to the case at bar. Plaintiffs have alleged that they conducted searches for physicians and medical services on Defendant's website, including for their particular ailments. *See* Compl. ¶¶ 81-84. At least one Plaintiff received direct advertisements for his medical conditions after inputting his sensitive medical information into Defendant's website. *Id.* at ¶ 81.

These violative practices are accomplished through implementing the Trackers on Defendant's website. *Id.* at ¶¶ 21-39. These Trackers operate in the background without clear notice to the user; they can tie inputted sensitive information to the identity of the user when they are using a Google account; and this information is both intercepted and transmitted to Google, which uses it for marketing purposes. *Id.* at ¶¶ 22-39. These factual allegations are highly analogous to those made in *W.W.* Accordingly, the Motion should be denied based on these arguments alone; and also, because Defendant's below FSCA arguments are flawed.

13

i.    **Plaintiffs Had A Reasonable Expectation Of Privacy When Using Defendant's Website.**

Defendant argues that Plaintiff did not have a reasonable expectation of privacy when using its website.  Defendant's argument is both legally and factually baseless.

Defendant primarily relies upon *Jacome v. Spirit Airlines*, No. 2021-000947-CA-01, 2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021) and *Goldstein v. Luxottica of America, Inc.*, No. 21-80546, 2021 WL 4093295 (M.D. Fla. Aug. 23, 2021).  However, these cases are distinguishable in two key respects.

First, those cases did not involve websites related to sensitive or private medical information, but instead involved general commercial information like airline reservations or sunglass purchases.  *Jacome,* 2021 WL 3087860, at *1; *Goldstein*, 2021 WL 4093295 at *1.  Second, the technology at issue in those cases was fundamentally different than the Trackers on Defendant's website. The defendants in *Jacome* and *Goldstein* employed a "session replay script," not the Trackers. *Jacome*, 2021 WL 3087860, at *1; *Goldstein*, 2021 WL 4093295 at *1 (Plaintiff alleged that "Defendant unlawfully intercepted his electronic communications using 'session replay' technology to track his activities on the website.").  Session replay technology collects information about the "way visitors interact" with websites and transmits data including "mouse movements, clicks, scrolls, zooms, window resizes, [and] text entry." *Hasson v. FullStory, Inc.*, 114 F.4th 181, 186 (3d Cir. 2024).  The *Jacome* court concluded that a defendant's use of session replay technology could not form the basis

14

of an FSCA claim because that technology "tracks a website's browser movements" and the FSCA specifically excludes from its definition any device "which permits the tracking of the movement of a person or object." *Jacome*, 2021 WL 3087860, at *3. The court also concluded that session replay technology does not transmit "content" within the meaning of the FSCA because the information transmitted by that technology "does not convey the substance or meaning of any message." *Id.* at *4.

As the *W.W.* court observed when rejecting an identical argument based on *Jacome*, that case is inapposite because it "addressed a different technology [than the Google Trackers at issue in this case and in *W.W.*], session replay, employed in a generic commercial setting." *W.W.*, 2025 WL 722892, at *3. Unlike session replay technology, which simply tracks "movements on [a] Defendant's website," the Google Trackers "intercept . . . communications," meaning that it is a "device" within the meaning of the FCSA. *Id.* Indeed, as the *W.W.* court observed when distinguishing *Jacome*, "[o]ther district courts considering factually closer cases—involving the same tracking tools at issue [in this case and in *W.W.*] utilized on healthcare providers' websites—have reached the opposite conclusion as the *Jacome* court." 2025 WL 722892, at *4 (collecting cases); *see also A.D. v. Aspen Dental Mgmt., Inc.*, No. 24-C-1404, 2024 WL 4119153 at *6 (N.D. Ill. Sept. 9, 2024) (declining to follow *Jacome's* "device" holding because the plaintiffs' "allegations include a plausible explanation of how the tracking technology employed by [the defendant] captured information communicated by website users and transmitted that information to third parties."). In fact, *Jacome*

15

itself recognized that although the FSCA was not intended to "extend to the use of commonplace analytics software to improve a website browser['s] experience" like session replay scripts, 2021 WL 3087860 at *3, the "FSCA was designed to protect precisely the information at issue in this case—private medical information," *W.W.*, 2025 WL 722892, at *4; *see Jacome*, 2021 WL 3087860, at *2 ("[T]he [c]ourt agrees with [the defendant] that Congress's main concern in amending the [f]ederal Wiretap Act to include electronic communications (which prompted the Florida legislature to likewise amend the FSCA) was to protect private personal and business records (like medical records) from interception on computerized recordkeeping systems."). *Jacome*'s holding that the session replay technology in that case did not intercept "content" within the meaning of the FSCA also is inapplicable here. The Trackers intercepted and transmitted, among other things, the specific medical conditions for which Plaintiffs searched.  Compl. ¶¶ 56-71, 81-83.

Finally, Defendant incorrectly argues that Plaintiffs have a lone and conclusory allegation regarding their expectation of privacy.  *See* Motion at 10 (citing Compl.  ¶ 114).  Defendants ignore entirely the section of the Complaint titled "Visitors to the Website Reasonably Expect Their Information to Stay Private."  *See* Compl. ¶¶ 40-49. This four-page, ten-paragraph section details the privacy expectations of Plaintiffs and the putative class while using Defendant's website.  Plaintiffs also allege that they expected privacy when communicating with Defendant through its website due to the sensitive nature of their health and medical conditions.  *Id.* at ¶¶ 84, 86.  These are not "bare" or "conclusory allegations"; and the fact that Defendant ignores them in their

Motion is indicative of the flaws with their argument. Accordingly, Defendant's expectation of privacy argument should be rejected.

### ii. Plaintiffs Have Adequately Alleged An Interception Of Their Communications.

The *W.W.* court held that nearly identical tracking software employed by the defendant in that case had "intercepted" communications. 2025 U.S. Dist. LEXIS 40038 at 10-14. Notably, Defendants ignore this on-point ruling in their interception arguments (although it cites to *W.W.* in other sections, so clearly it is aware of the decision). *See* Motion at 20. In essence, the *W.W.* Court found persuasive allegations that plaintiff's searches and substantive search terms were intercepted through the Trackers and then used for direct marketing purposes. 2025 U.S. Dist. LEXIS 40038 at 16-17. There are nearly identical allegations in the case at bar regarding interception and use of intercepted content for marketing purposes. *See* Compl. ¶¶ 22-39, 50-71, 81. Thus, there is no reason for this Court to depart from the reasoning in *W.W.*

### iii. Plaintiffs Have Adequately Alleged That Defendant Intercepted The "Contents" Of Their Communications.

Under the FSCA, the word "contents" includes "any information concerning the substance, purport, or meaning of that communication." Fla. Stat. § 934.02(7). When a patient or prospective patient communicates with a healthcare provider regarding their health conditions and medical needs, these communications include the "substance" of information to be communicated. Thus, such communications are "contents" that are eligible for protection under the FSCA. *See W.W.*, 2025 U.S. Dist. LEXIS 40038 at *16 ("Plaintiff alleges that Defendant permitted unauthorized parties

17

to intercept her 'internet communications while accessing [Defendant's website], including the contents thereof,' which encompassed 'the URL visited, the medical conditions and types of doctors searched,' and other medical information related to her.").

Plaintiffs here allege in detail how the Trackers capture and intercept the substance of their communications. *See* Compl. ¶¶ 22-39, 50-71. These allegations include specific examples of how the substance of communications are captured and intercepted. *Id.* For example, a patient or prospective patient who searches for a "mammogram" can have that search, including both medical and geographic data, intercepted by the Trackers and then have that information transmitted to Google. *Id.* at ¶¶ 67-71. These are specific and detailed instances where Defendant is intercepting the substance and contents of communications made by its patients, and these allegations fall squarely in line with the allegations made in *W.W.* These allegations, and reasonable inferences therefrom, are more than sufficient at the motion to dismiss stage.

Defendant's arguments to the contrary, relying on *Jacome*, are inapposite. As discussed in detail above, the *W.W.* court explained why the healthcare context is materially distinguishable to the general commercial context of *Jacome*. Further, the Trackers use technology beyond the "session replay script" at issue in *Jacome*. *W.W.*, 2025 U.S. Dist. LEXIS 40038 at *8-9.

18

### iv. Plaintiffs Have Adequately Alleged The Contents Of The Information Intercepted.

Plaintiffs have adequately alleged the information Defendant intercepted. Plaintiff Crespi has arthritis. Compl. ¶ 81. He sought both rheumatologists, and treatment for his ailments, through Defendant's website. Shortly after he transmitted this information to Defendant, he received direct advertisements to treat these conditions. *Id.* Plaintiff Forero was in need of a general practitioner physician. He used Defendant's website to search for such a physician. *Id.* at ¶ 82. He also alleges that he sought treatment for other ailments in the past using Defendant's website. *Id.* Plaintiff Davis used Defendant's website to search for primary care physicians and to schedule appointments. *Id.* at ¶ 83. She has also disclosed her particular medical conditions and symptoms to Defendant. *Id.* The Complaint alleges this information was intercepted and that the Plaintiffs suffered resulting injuries. *Id.* at ¶¶ 85-95. Thus, Plaintiffs have alleged what information was transmitted and intercepted.

Defendant relies on inapposite case law, primarily citing *Doe v. Upperline Health, Inc.*, No. 1:23-cv-01261-RLY-CSW, 2024 U.S. Dist. LEXIS 221634 (S.D. Ind. Sep. 24, 2024), for the proposition that Plaintiffs have failed to allege what information was intercepted. However, *Upperline* involved an Indiana state law claim that is not analogous to the FSCA and therefore has no bearing on this case.

## 2.    Plaintiffs Have Properly Pled an ECPA Violation

Defendant argues that Plaintiffs' ECPA claim should be dismissed because Plaintiffs were parties to the intercepted communications. *See* Motion at 15-16. However, under the "crime-tort" exception, Defendant remains liable.

The ECPA's "crime-tort" exception allows a plaintiff to state a claim under the ECPA in spite of their consent to the communication, if the plaintiff plausibly alleges that the communications were "intercepted for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d). Plaintiffs allege that Defendant intercepted communications with the "intent[] to share and monetize its patients' IIHI [individually identifiable health information], violating HIPAA and its common law duties." Compl. ¶ 45. In addition, Plaintiffs allege that Defendant intentionally violated the FSCA. Analyzing nearly identical allegations, the court in *W.W.* held that such pleadings are sufficient to trigger the crime-tort exception. *See W.W.,* 2025 U.S. Dist. LEXIS 40038 at **20-24. Thus, Defendant's argument should be rejected, and the Motion should be denied.

## 3.    Plaintiffs Have Sufficiently Pled a Breach of Confidence Claim

To plead a breach of confidence claim, the plaintiff must allege that the defendant disclosed to a third-party nonpublic information that the defendant learned within a confidential relationship; and the disclosure must be made without the consent of the Plaintiff. *See W.W.,* 2025 U.S. Dist. LEXIS 40038 at *24-26.

Once again, the *W.W.* opinion is highly analogous. Defendant attempts to sidestep the *W.W.* analysis by arguing that there was no confidential relationship between the parties and that Plaintiffs failed to allege disclosure of confidential information.

With respect to the "confidential relationship," Plaintiffs allege that they expected all communications with a healthcare provider to be kept confidential. *See* Compl. ¶ 41. Plaintiffs allege that because of privacy laws such as HIPAA, they expected Defendant would maintain all communications with it as confidential. *Id.* ¶ 42-45. Plaintiffs also allege that they had an expectation of privacy with respect to any physician-patient relationship with Defendant's physicians. *See* Compl. ¶ 48.

Similarly, Plaintiffs have alleged disclosure of their confidential information to a third party, Google. Plaintiffs have alleged that they disclosed their private medical information to Defendant through its website, which was intercepted and transmitted to Google. *See* Compl. ¶¶ 81-85. Proving the disclosure—and showing other disclosures can be reasonably inferred because Plaintiff Crespi received direct marketing towards his ailments after the interception. *Id.* at ¶ 81. Accordingly, and following the *W.W.* holding that upheld a similar claim, the breach of confidence claim has been sufficiently pled by Plaintiffs.

### 4.    Plaintiffs Have Sufficiently Pled An Unjust Enrichment Claim

Defendant's unjust enrichment arguments are founded upon two theories: that an unjust enrichment claim cannot be founded upon wrongful conduct; and that Plaintiffs failed to allege how Defendant was unjustly enriched.

With respect to the wrongful conduct theory, Defendant argues that an unjust enrichment claim cannot be predicated on wrongful conduct, because the wrongful conduct provides the avenue of relief. *See* Motion at 23. However, Florida courts, including the *W.W.* court, have refused to adopt that hard-line rule and allowed unjust enrichment claims to proceed. 2025 U.S. Dist. LEXIS 40038 at \*25-26; *see also State Farm Mutual Automobile Insurance Co. v. Performance Orthopaedics & Neurosurgery, LLC,* 2018 U.S. Dist. LEXIS 26841 (S.D. Fla. Feb. 16, 2018); *Absolute Activist Value Master Fund Limited v. Devine,* 233 F. Supp. 3d 1297, 1329 (M.D. Fla. 2017); *State Farm Fire & Cas. Co. v. Silver Star Health and Rehab Inc.,* 2011 U.S. Dist. LEXIS 145629, 2011 WL 6338496, at \*6 (M.D. Fla. Dec. 19, 2011), aff'd sub nom. *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab,* 739 F.3d 579 (11th Cir. 2013).

Moreover, even if the wrongful conduct rule did control, plaintiffs are permitted to plead unjust enrichment in the alternative to other alleged wrongful conduct. *State Farm Mutual Automobile Insurance Co.,* 2018 U.S. Dist. LEXIS 26841 at 5-6.

Similarly faulty is Defendant's argument that Plaintiff failed to plead how it was enriched. *See* Motion at 24-25. As Defendant admits, a Plaintiff need only allege that

the Plaintiff conferred a benefit, that defendant had knowledge of the benefit, and that the defendant accepted or retained the benefit. *See Id.* at 23.

All of these elements are satisfied. Plaintiffs have conferred a benefit upon Defendant, and it received a direct benefit from accumulating Plaintiffs' sensitive medical information to "inform its business and marketing decisions." *See* Compl. ¶ 76. Plaintiffs allege that Defendant deliberately implemented the Trackers and made an affirmative decision to include tracking code in its website to provide Google with access to its visitors' sensitive information. *Id.* at ¶¶ 45, 73. Plaintiffs have also alleged that Defendant retained these benefits. *Id.* at ¶ 147. These facts, as pleaded by Plaintiffs, are sufficient to sustain an unjust enrichment claim against Defendants. Accordingly, the Motion should be denied for these reasons as well.

## CONCLUSION

Plaintiffs' allegations in the Complaint establish that they have Article III standing; and that they have sufficiently pled the claims addressed in this brief. Accordingly, for each of the foregoing reasons, the Motion should be denied.

**LUIS ANGEL HEREDIA CRESPI,**
**LYNETTE DAVIS,** and
**MARTIN FORERO,**

s/Daniel I. Schlade
Daniel I. Schlade
James M. Dore
6232 N. Pulaski, #300
Chicago, IL 60646
773-550-3775
danschlade@gmail.com

23

## **Certificate of Service**

Daniel I. Schlade, an attorney, certifies that on January 16, 2026, he served the foregoing instrument on the below by filing same through the Pacer electronic filing system:

Starr Turner Drum
sdrum@polsinelli.com, acole@polsinelli.com, mtheis@polsinelli.com

Xeris E. Gregory
xgregory@polsinelli.com, mtheis@polsinelli.com

/s/Daniel I. Schlade

24