**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

LUIS ANGEL HEREDIA CRESPI, )
LYNETTE DAVIS, and MARTIN )
FORERO, individually and on behalf of all )
others similarly situated, )
)
   Plaintiffs,   )  Case No. 8:25-cv-02245-WFJ-NHA
)
v. )
)
BAYCARE HEALTH SYSTEM, INC., )
)
   Defendant. )

**DEFENDANT'S MOTION TO DISMISS**
**AMENDED CLASS ACTION COMPLAINT AND MEMORANDUM OF LAW**

BayCare Health System, Inc. ("BayCare") moves this Court to dismiss the Amended Class

Action Complaint (ECF No. 26) pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of

Civil Procedure because Plaintiffs lack Article III standing and fail to state a claim upon which

relief may be granted.

## I. INTRODUCTION

Plaintiffs' Amended Complaint does not cure the jurisdictional and pleading defects

identified in BayCare's initial Motion to Dismiss. On February 4, 2026, this Court dismissed

Plaintiffs' Complaint as a shotgun pleading because each claim "adopt[ed] the allegations of all

preceding counts." *See* ECF No. 25. Despite having the opportunity to amend their initial

Complaint, Plaintiffs' only substantive changes in the Amended Complaint are attempts to cure

their shotgun pleading. *See* Am. Compl. But like their first Complaint, Plaintiffs' Amended

Complaint contains much speculation but few facts. Plaintiffs allege conjecture and hypothetical

harm rather than a concrete, traceable injury.

1

Plaintiffs lack Article III standing because they still have not alleged any injury in fact traceable to BayCare's conduct. And even if Plaintiffs had standing (they do not), the Amended Complaint fails to plausibly allege Plaintiffs' statutory, breach of confidence, and unjust enrichment claims.[1] Plaintiffs' Amended Complaint does nothing to resolve the deficiencies in their original Complaint, and the Amended Complaint should be dismissed with prejudice.

## II.      FACTUAL BACKGROUND

BayCare is a nonprofit healthcare organization that operates medical facilities throughout Florida. Am. Compl. ¶ 10. BayCare maintains an informational website at https://baycare.org. *Id*. ¶ 1. Plaintiffs allege that BayCare implemented two Google-owned technologies—Google Analytics and DoubleClick—on its website and thereby "procure[d]" Google to intercept electronic communications from website visitors. *Id*. ¶¶ 1, 75.

Plaintiff Crespi alleges that he used BayCare's website "for approximately three years" and "within the last year" to "seek physicians, specifically rheumatologists, to treat arthritis and other ailments." *Id*. ¶ 81. He further alleges that, after visiting the website, he "observed advertisements for products or services related to his medical conditions." *Id*. Crespi does not allege that he ever received healthcare services from BayCare. *See id*.

Plaintiff Forero alleges that he used BayCare's website "for years," including most recently in March, to find and obtain "general medical treatment" and locate a primary care physician. *Id*. ¶ 82. Forero does not allege that he ever received healthcare services from BayCare. *See id*.

Plaintiff Davis, the only Plaintiff claiming to be a BayCare patient, alleges she has used BayCare's website for more than ten years, through May 2025, to locate facilities and physicians

---

[1] During the Parties' February 27, 2026, meet and confer regarding BayCare's Motion to Dismiss Plaintiffs' Amended Complaint, Plaintiffs consented to the dismissal of their invasion of privacy and implied contract claims.

and to schedule appointments. *Id*. ¶ 83. She asserts that she disclosed her medical conditions and symptoms while using the website. *Id*.

All three Plaintiffs allege they accessed BayCare's website from their mobile phones, but do not identify the type of phone, operating system, or browser used. *See id*. ¶¶ 81–83. Plaintiffs likewise do not identify any specific web pages they visited or that the Google technologies were present on those pages. No plaintiff claims to have used the website's search bar or to have conducted any of the searches or actions reflected in the "Examples of Personal Data Collection and Disclosure on the BayCare Website" section of their Complaint. *Compare id*. ¶¶ 56–71, *with id*. ¶¶ 81–83.

The Amended Complaint includes the same screenshots from their original Complaint; screenshots purportedly tied to BayCare's website. *Compare* Compl. ¶¶ 57–60, 62, 64–66, 68–69, *with* Am. Compl. ¶¶ 57–60, 62, 64–66, 68–69. But Plaintiffs still do not allege that any of these screenshots reflect their own experiences. For example, the Amended Complaint shows an "example of search results when 'diabetes' is entered into the 'Find a Doctor' search bar" (*id*. ¶ 57), but none of the Plaintiffs alleges having used that feature, having that medical condition, or searching for the term "diabetes." The Amended Complaint also includes a screenshot of BayCare's website menu showing a link to the "Cancer Institute" page and another purporting to show information allegedly "intercepted" by Google from visits to that page. *Id*. ¶¶ 64–65. But none of the Plaintiffs alleges ever visiting that page, having cancer, or that their information was intercepted as depicted.

## III.    LEGAL STANDARD

Article III standing to sue is a limit on subject-matter jurisdiction. The plaintiff bears the burden of establishing standing. *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016). "[A] plaintiff

3

must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Edgerton v. City of St. Augustine, Fla.*, No. 3:20-cv-941-BJD-PDB, 2023 WL 4687563, at \*16 (M.D. Fla. Jan. 31, 2023) (quoting *Town of Chester v. Laroe Est., Inc.*, 581 U.S. 433, 434 (2017)).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A "formulaic recitation" of the elements of a claim does not suffice, and a court cannot sustain a claim if it tenders "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678, 681 (quoting *Twombly*, 550 U.S. at 557).

A court may dismiss a case with prejudice after a plaintiff has had an opportunity to amend or where amendment would be futile. *See Eiber Radiology, Inc. v. Toshiba America Medical Sys., Inc.*, 673 F. App'x 925, 930 (11th Cir. 2016) ("We have never required district courts to grant counseled plaintiffs more than one opportunity to amend a deficient complaint, nor have we concluded that dismissal with prejudice is inappropriate where a counseled plaintiff has failed to cure a deficient pleading after having been offered ample opportunity to do so."); *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) ("This court has found that denial of leave to amend is justified by futility when the 'complaint as amended is still subject to dismissal.'").

## IV.      ARGUMENT

### A.      Plaintiffs lack Article III standing to sue BayCare.

Before addressing the merits, this Court must determine whether Plaintiffs have Article III standing to sue BayCare. Plaintiffs must show that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo,* 578 U.S. at 338. Even after amending their

Complaint, no Plaintiff alleges an injury in fact fairly traceable to BayCare's alleged use of Google technologies on its website.

          1.      *Plaintiffs fail to allege an injury in fact.*

To establish an injury in fact, Plaintiffs must allege "an invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, (1992)). A "concrete" injury must be "real, and not abstract," and "particularized" means it must "affect the plaintiff in a personal and individual way." *Id.*

The Amended Complaint lacks plausible allegations of a concrete and particularized injury. Plaintiffs do not allege which pages of BayCare's website they visited, what information was allegedly intercepted, or how they were harmed. Only Crespi alleges any semblance of a downstream effect of using the site, claiming that he later saw "advertisements for products or services related to his medical conditions." Am. Compl. ¶ 81. But Crespi does not allege that viewing these ads caused him any harm. Forero and Davis do not allege any downstream effects. *See Id.* ¶¶ 82–83.

Plaintiffs present the same hypotheticals in the Amended Complaint as they did in the initial Complaint. *Compare* Compl. ¶¶ 57, 59, 62, 64, 66, 68, 69, *with* Am. Compl. ¶¶ 57, 59, 62, 64, 66, 68, 69. The hypotheticals concern alleged tracking activities on the website, including (1) an example of search results when "diabetes" is entered into the "Find a Doctor" search bar (Am. Compl. ¶ 57), (2) an example of what is shown if a user clicks on the profile of Dr. Talal Farris from the search results (¶ 59), (3) what is purportedly captured when a user "views the page showing locations of hospitals with surgery centers" or, specifically, the Bardmoor Surgery Center (¶ 62), (4) the ability to visit the "Cancer Institute" page from the "Specialties and Treatments" via a dropdown menu (¶ 64), (5) what is purportedly captured when a user visits "a page about

BayCare's 'Lung Cancer Screening Program'" (¶ 66), (6) what is purportedly captured when a user searches "mammogram" (¶ 68), and (7) what is purportedly captured "if a user then clicks to view the 'Hinks and Elain Shimberg Breast Center at St. Joseph's Hospital North' location from the search results" (¶ 69). None of these examples reflect Plaintiffs' actual alleged experiences. Nor do the screenshots, captured from a desktop browser, reflect Plaintiffs' actual alleged experiences. *See id.* ¶¶ 81–83 (alleging Plaintiffs used only their phones to visit BayCare's website).

Instead of alleging an actual injury in the Amended Complaint, Plaintiffs still hide behind the same "list of horribles" that have or may befall the putative class. *See Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 732–33 (1st Cir. 2016) (no standing where "the complaints offer[ed] only scattered descriptions of generalized harms"). Plaintiffs allege invasion of privacy, loss of data value, chilling effects on healthcare communications, risk of future use, and statutory injury. Am. Compl. ¶¶ 86–95. But even if the Amended Complaint's screenshots and hypotheticals reflected Plaintiffs' individual experiences, these "scattered descriptions of generalized harms" are still insufficient to establish an injury in fact.

### i.    Statutory violations alone do not constitute an injury in fact.

Plaintiffs' statutory claims under the Electronic Communications Privacy Act ("ECPA") and the Florida Security of Communications Act ("FSCA") do not confer Article III standing. "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 578 U.S. at 341. "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.*; *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 426–27 (2021) (holding a "bare procedural violation" of a federal statute, without concrete harm, is not an injury in fact).

6

A statutory violation creates standing only if it "(1) inflicts some separate concrete harm on the plaintiff or (2) creates a material risk of such harm to the plaintiff." *Waters v. Fast AC, LLC*, 60 F.4th 642, 648 (11th Cir. 2023). Plaintiffs have alleged neither a concrete harm nor a future risk of such harm. Even if Plaintiffs could plausibly allege statutory violations (they cannot), those violations alone do not constitute an injury in fact.

### ii.    Invasion of privacy is not an injury in fact.

Plaintiffs' alleged "invasion of privacy" (Am. Compl. ¶ 86) does not constitute an injury in fact. Courts routinely reject such allegations as theoretical and too speculative to confer standing. *See, e.g.*, *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 694 (7th Cir. 2015) (finding alleged loss of private information is an "abstract injury" that cannot support standing); *Khan v. Children's Nat'l Health Sys.*, 188 F. Supp. 3d 524, 533 (D. Md. 2016) (finding no standing for "loss of privacy" where the plaintiff failed to identify "any potential damages arising from such a loss").

While courts may look to historical analogs to assess a concrete injury, there is no standing where a plaintiff "completely fails to allege an element essential to the harm set out as a common-law comparator." *Drazen v. Pinto*, 74 F.4th 1336, 1343 (11th Cir. 2023) (citation omitted). Plaintiffs completely fail to allege the essential elements of an invasion of privacy: an (1) intrusion (2) into a private place (3) that was highly offensive, and therefore, their alleged loss of privacy is not an injury in fact. *See Delong v. PHE, Inc.*, No. 24-5212, 2025 WL 2447787, at *7 (E.D. Penn. Aug. 25, 2025) (no standing where the alleged conduct at issue did "not rise to the requisite level of a highly offensive intrusion" for intrusion-upon-seclusion claim).

*First*, Plaintiffs failed to allege an intrusion because there is no intrusion where a plaintiff voluntarily provides information. *See, e.g.*, *T.D. v. Piedmont Healthcare, Inc.*, No. 1:23-CV-5416-TWT, 2024 WL 5284883, at *2 (N.D. Ga. Dec. 10, 2024) ("There is no intrusion upon privacy

when a patient voluntarily provides personally identifiable information and protected information to his or her healthcare provider."). Plaintiffs allege only that they voluntarily browsed and interacted with BayCare's public website (*see* Am. Compl. ¶¶ 81–83), which does not constitute an intrusion. Nor do Plaintiffs' allegations that BayCare shared information with third parties transform voluntary disclosure into an intrusion. *See Cook v. GameStop, Inc.*, 148 F.4th 153, 160 (3d Cir. 2025) ("The intrusion itself makes the defendant subject to liability.")

*Second,* Plaintiffs fail to plausibly allege an intrusion into a private place because Florida law requires intrusion "into a private place and not merely into a private activity." *Pet Supermarket, Inc. v. Eldridge*, 360 So. 3d 1201, 1207 (Fla. Dist. Ct. App. 2023) (quoting *Spilfogel v. Fox Broad. Co.*, 433 F. App'x 724, 727 (11th Cir. 2011)); *see also Hammer v. Sorensen*, 824 F. App'x 689, 695 (11th Cir. 2020) (noting that Florida construes intrusion more narrowly than the Restatement and requires intrusion into a private *place*, not simply into personal affairs). Alleged browser activity on a public website, as Plaintiffs have alleged here, does not involve physical or electronic entry into a private place, and courts routinely reject virtually identical claims. *See W.W. v. Orlando Health, Inc.*, No. 6:24-cv-1068-JSS-RMN, 2025 WL 722892, at *9 (M.D. Fla. Mar. 6, 2025) (dismissing intrusion claim where the plaintiff alleged a hospital "intruded into her private quarters because its tracking tools intruded into her web browser conversations with [her] healthcare providers"); *Bradley v. City of St. Cloud*, No. 6:12-cv-37TBS, 2013 WL 3270403, at *4–5 (M.D. Fla. June 26, 2013) (dismissing claim where the defendant allegedly viewed the plaintiff's medical records because plaintiff did "not allege that Defendants intruded into her home or another private place").

*Third*, Plaintiffs fail to plausibly allege any intrusion was "highly offensive" because they did not allege any conduct that is "so outrageous in character, and so extreme in degree, as to go

beyond all possible bounds of decency." *Celestine v. Capital One*, No. 17-20237, 2017 WL 2838185, at \*4 (S.D. Fla. Jun. 30, 2017). Florida courts equate the "highly offensive" requirement with the "outrageousness" standard for intentional infliction of emotional distress, which requires conduct "beyond all bounds of decency and utterly intolerable in a civilized community." *Hammer*, 824 F. App'x at 695 (quotation omitted); *see also Stasiak v. Kingswood Co-Op, Inc.*, No. 8:11-cv-1828, 2012 WL 527537, at \*2 (M.D. Fla. Feb. 17, 2012) (same). Plaintiffs' allegations fall far short because their alleged "private communications" consist only of routine website browsing to locate physicians and medical facilities (Am. Compl. ¶¶ 81–83), but courts have found far more sensitive information not sufficiently outrageous to support invasion of privacy. *See, e.g., Regions Bank v. Kaplan*, No. 17-15478, 2021 WL 4852268, at \*13 (11th Cir. Oct. 19, 2021) (unredacted social security number); *Stasiak*, 2012 WL 527537, at \*2 (credit report); *Post-Newsweek Stations Orlando, Inc. v. Guetzloe*, 968 So. 2d 608, 613 (Fla. Dist. Ct. App. 2007) (medical records and attorney communications).

Because Plaintiffs completely failed to allege a highly offensive intrusion into a private place, their alleged invasion of privacy is not sufficient as a common-law comparator to establish Article III standing. *See Drazen*, 74 F.4th at 1343.

### iii.   "Loss of data value" is not an injury in fact.

Plaintiffs' assertion that they "have been deprived of the economic value of their personal data" (Am. Compl. ¶ 87) does not constitute an injury in fact. Courts consistently reject the theory that personal information has independent monetary value. *See, e.g., Remijas*, 794 F.3d at 697 (finding no standing for "such an abstract injury" where the complaint did not suggest that the plaintiffs "could sell their personal information for value"); *Welborn v. IRS*, 218 F. Supp. 3d 64, 78 (D.D.C. 2016) (same); *Henderson v. Reventics, LLC*, No. 23-cv-00586, 2024 WL 5241386, at

*6 (D. Colo. Sept. 30, 2024) (same). And courts routinely reject this damages theory without specific allegations that a plaintiff intended to sell their personal information but could not. *See In re 21ˢᵗ Century Oncology Customer Data Sec. Breach Litig.*, 380 F. Supp. 3d 1243, 1257 (M.D. Fla. 2019) (rejecting theory because the plaintiffs did not allege "that their personal information has an independent monetary value that is now less than it was before the data breach."); *Provost v. Aptos, Inc.*, No. 1:17-CV-02120-ELR, 2018 WL 1465766, at *4 (N.D. Ga. Mar. 12, 2018) (same).

Here, Plaintiffs' conclusory allegations do not explain how their personal information allegedly depreciated by visiting BayCare's website. They do not allege that they tried and failed to sell their personal information, or that they were forced to sell it at a lower price. Nor do they allege that the categories of information referenced in the sources cited in their Amended Complaint—such as prescription records or social security numbers—were provided on BayCare's website, much less impermissibly shared or transmitted to third parties. *See* Am. Compl. ¶ 90 n.5 (cited article states "[p]rescription records, blood tests, doctor notes, hospital visits and insurance records are sold to commercial companies"), ¶ 91 n.6 (cited article states "[r]ecords that contain your social security number or mother's maiden name are used for identity theft."). Plaintiffs' speculative assertions that they "have been deprived of the economic value of their personal data" (*id*. ¶ 87) "will not do." *Iqbal*, 556 U.S. at 678.

### iv.        "Chilling effect" is not a cognizable injury.

Plaintiffs' vague assertion that BayCare's conduct "created a chilling effect on digital healthcare communications" (Am. Compl. ¶ 93) lacks any supporting facts. *See Dermer v. Miami-Dade Cnty.*, 599 F.3d 1217, 1220–21 (11th Cir. 2010) (noting the plaintiff alleged only a "chilling effect on [his] willingness to participate," which "failed to provide the court with anything more than generalizations"). Allegations of a "subjective chill are not an adequate substitute for a claim

10

of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972). Plaintiffs' generic assertions of a "chilling effect" do not allege a specific objective harm. This is especially true where, as here, Plaintiffs do not allege they stopped using BayCare's website or, for Davis, sought treatment from a different provider.

> **v.    Risk of future harm is too speculative to create an injury in fact.**

Plaintiffs' claim of an "ongoing risk" that their information "may be further processed," or "potentially used by additional third parties" (Am. Compl. ¶ 94) is insufficient to establish standing. "[T]he mere risk of future harm, standing alone, does not qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a separate harm." *TransUnion*, 594 U.S. at 436. Plaintiffs allege no facts showing that a risk of future harm caused them any separate harm.

Plaintiffs also fail to allege a sufficient risk of future harm. It is not enough that a future injury might come to pass or is even reasonably likely to happen—the "threatened injury must be certainly impending to constitute an injury in fact." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409–10 (2013) (quotation omitted); *see also TransUnion*, 594 U.S. at 442 (rejecting that credit reports containing inaccurate personal information may be distributed at some unknown time in the future sufficiently created risk of future harm). Plaintiffs allege only that their personal information "*may be* further processed, combined with other data sources, or *potentially used* by additional third parties." Am. Compl. ¶ 94 (emphasis added). Such allegations do not demonstrate that any injury is "certainly impending."

> 2.    *Plaintiffs have not alleged an injury that is fairly traceable to BayCare.*

Even if Plaintiffs plausibly alleged injury (they have not), they fail to show that any injury is fairly traceable to BayCare. There must be a "causal connection between the injury and the conduct complained of," *Lujan*, 504 U.S. at 560, and a "speculative chain of possibilities" is not enough. *Clapper*, 568 U.S. at 414. The Amended Complaint's only allegation that could be

generously construed as a "harm" is Crespi's claim that he "observed advertisements" after visiting BayCare's website. Am. Compl. ¶ 81. But Crespi does not allege when or where he saw the ads, or any plausible nexus between the ads and BayCare's website. Even if the alleged ads alone constituted a cognizable injury (they do not), Crespi has failed to connect them to BayCare's conduct.

**B.      Plaintiffs fail to state a claim upon which relief can be granted.**

Plaintiffs assert six causes of action: (1) violations of the FSCA, (2) violations of ECPA, (3) breach of confidence, (4) invasion of privacy—intrusion upon seclusion, (5) unjust enrichment, and (6) breach of implied contract. Each claim fails as a matter of law.

*1.      Plaintiffs fail to state a claim for violation of the FSCA.*

To state a claim under the FSCA, a plaintiff must allege facts showing (1) an interception of (2) an oral, wire, or electronic communication that was (3) intentionally intercepted, disclosed, or used, in violation of the FSCA. Fla. Stat. § 934.02(3). And "[n]o liability exists unless there is a reasonable expectation of privacy in the underlying communication." *Goldstein v. Luxottica of America, Inc.*, No. 21-80546, 2021 WL 4093295, at *2 (M.D. Fla. Aug. 23, 2021), report and recommendation adopted, 2021 WL 4125357 (S.D. Fla. Sept. 9, 2021) (citation omitted). In interpreting the FSCA, Florida courts look to federal cases construing the Federal Wiretap Act. *See Benessere Inv. Grp., LLC v. Swider*, No. 24-CV-21104, 2024 WL 4652090, *5 (S.D. Fla. Oct. 31, 2024) ("Florida modeled the FSCA after the [Federal] Wiretap Act . . . and the causes of action under each are essentially identical"). Any ambiguities in the statute should be resolved in favor of BayCare. *See Jacome v. Spirit Airlines*, No. 2021-000947-CA-01, 2021 WL 3087860, at *3 (Fla. Cir. Ct. June 17, 2021) ("Even if the court found there was an ambiguity as to the FSCA's scope, the rule of lenity demands that the Court interpret the FSCA in [defendant's] favor.").

**i.      Plaintiffs fail to establish a reasonable expectation of privacy.**

12

A threshold requirement is for Plaintiffs to plead sufficient facts establishing a reasonable expectation of privacy when visiting BayCare's website. They do not. *See id.* at *7 (finding a plaintiff must "plead a reasonable expectation of privacy" and concluding that a "singular conclusory allegation that [plaintiff] had a reasonable expectation of privacy when browsing the Website" was insufficient). Plaintiffs' bare allegation that they "had a reasonable expectation of privacy in the electronic communications they had with BayCare's Website" (Am. Compl. ¶ 115) is precisely the sort of conclusory statement that is insufficient to state a claim. *See id.*; *Iqbal*, 556 U.S. at 678 (noting a claim is unsustainable if it tenders "naked assertion[s] devoid of further factual enhancement").

Even if Plaintiffs' conclusory allegations satisfy the federal pleading standards (they do not), they still fail to establish a reasonable expectation of privacy. *See State v. Inciarrano*, 473 So. 2d 1272, 1275 (Fla. 1985) ("A reasonable expectation of privacy under a given set of circumstances depends upon one's actual subjective expectation of privacy as well as whether society is prepared to recognize this expectation as reasonable."). Courts applying Florida law consistently hold that no such expectation exists when a plaintiff voluntarily browses a public website—as Plaintiffs alleged here. *See Goldstein*, 2021 WL 4093295, at *2 (dismissing FSCA claim based on alleged visits to defendant's website because "no liability exists unless there is a reasonable expectation of privacy in the underlying communication"). The Eleventh Circuit similarly recognized that "browsing the open internet" is akin to "traveling along the equivalent of 'public highways.'" *United States v. Taylor*, 935 F.3d 1279, 1284 n.4 (11th Cir. 2019). Simply put, users on a public website have no reasonable expectation of privacy in their interactions with it. Because Plaintiffs fail to allege facts supporting such an expectation, their FSCA claim necessarily fails.

### ii.      Plaintiffs fail to establish an "interception."

Under the FSCA, an "interception" is the "aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." Fla. Stat. § 934.02(3). Courts apply "a narrow reading of what constitutes an 'interception' under" the FSCA. *Benessere Inv. Grp.,* 2024 WL 4652090, at *5; *see United States v. Steiger*, 318 F.3d 1039, 1050 (11th Cir. 2003) (noting that "very few seizures of electronic communications from computers will constitute 'interceptions'"). A plaintiff must allege a "contemporaneous acquisition of electronic communications while in flight." *Benessere Inv. Grp.,* 2024 WL 4652090, at *5 (internal quotation marks omitted) (citing *Steiger*, 318 F.3d at 1050). In other words, "an interception of electronic communications must occur contemporaneously with their transmission." *Id.* (citing *United States v. Barrington*, 648 F.3d 1178, 1202 (11th Cir. 2011)).

Plaintiffs fail to plead nonconclusory facts showing that BayCare contemporaneously intercepted their electronic communications in transmission. Instead, they repeat the legal element—asserting that the alleged interception occurred "contemporaneously with their transmission"—without alleging any supporting facts. Am. Compl. ¶¶ 113, 117, 127. As courts applying the FSCA have explained, "allegations without pleading any ultimate facts in support are insufficient to demonstrate that any interception happened contemporaneously with transmission." *Jacome,* 2021 WL 3087860, at *6. Plaintiffs' bare assertions cannot sustain an FSCA claim.

Plaintiffs' own description of the operation of the alleged tracking technologies further undermines their conclusory allegations of interception. Plaintiffs allege that BayCare's website uses Google Analytics 4 Tracker and DoubleClick, which they describe as tools that "collect[] various data points about user interactions with a website" and then "transmit[]" this data to Google. Am. Compl. ¶¶ 3, 26, 35. Plaintiffs allege these technologies function via lines of code "embedded"

14

in BayCare's website and that this code "enables the collection of various types of data about the user's interactions with the website, which is transmitted to third-party servers." *Id.* ¶ 17.

These allegations describe two distinct communications: (1) a communication between Plaintiffs' browsers and BayCare's website, and (2) a subsequent, separate communication between Plaintiffs' browsers and the third-party analytics tools. *See* id. ¶¶ 17, 81–83. Under Plaintiffs' theory, any alleged "interception" occurred only *after* the browser first communicated with BayCare's website, and the analytics tools *later* collected and transmitted data about those interactions. This is the opposite of a contemporaneous "in-flight" interception. Applying the required narrow construction of "interception," Plaintiffs' allegations cannot meet the FSCA's definition. *See Benessere Inv. Grp.,* 2024 WL 4652090, at *5; *Schwartz v. ADP, Inc.*, No. 2:21-cv-283, 2021 WL 3172029, at *4 (M.D. Fla. July 26, 2021) (FSCA claim failed where plaintiff did not plausibly allege "any contemporaneous transmission").

### iii.    Plaintiffs fail to allege the "contents" of their communications were intercepted.

The FSCA defines "contents" as "any information concerning the substance, purport, or meaning of that communication." Fla. Stat. § 934.02(7). Courts interpret this definition narrowly to require acquisition of the "essential part" of a communication—the "intended message," "meaning conveyed," or "the thing one intends to convey." *Jacome*, 2021 WL 3087860, at *3 (quoting *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014)). Accordingly, to avoid dismissal, Plaintiffs must plausibly allege that BayCare intercepted "the intended message conveyed by the communication" that revealed "the substance, purport, or meaning of [that] communication." *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1322 (S.D. Fla. 2021) (quoting Fla. Stat. § 934.02(7)). Plaintiffs do not—and cannot—allege that here.

15

To the contrary, their own factual allegations foreclose any plausible claim that the analytics tools captured the "contents" of a communication. Plaintiffs describe in detail how Google Analytics 4 and DoubleClick allegedly operate. *See* Am. Compl. ¶¶ 22–39. According to Plaintiffs, Google Analytics tracks user "actions" on a website to "gain insights into user behavior and to target them with personalized advertisements." *Id*. ¶ 23. Plaintiffs assert that Google Analytics captures "various data points about user interactions with a website," which it labels "events." *Id.* ¶ 26. Plaintiffs further define these "events" as "*page views, clicks, form submissions, video plays, file downloads, and custom events* defined by the website owner." *Id*. (emphasis added). Likewise, Plaintiffs allege that DoubleClick records similar user "interactions"—such as "page views, clicks, form submissions, [and] video plays"—and categorizes them as "activities" for "advertising and attribution purposes." *Id*. ¶ 35.

None of these alleged data points constitutes the "substance" or "meaning" of a communication. Courts repeatedly hold that such routine, functional information—page views, clicks, navigation patterns, and similar activity—does not reveal the "intended message" of any communication and therefore does not qualify as "contents" under the FSCA. *See, e.g., Goldstein*, 559 F. Supp. 3d at 1321. Plaintiffs' theory falls flat; they describe only the collection of behavioral signals, not the acquisition of any message Plaintiffs sought to convey.

### iv.        Plaintiffs fail to allege what information was intercepted.

To survive dismissal, "[t]he Court must know *what* information was allegedly intercepted to determine *whether* it qualifies as content." *Id*. at 1322. Plaintiffs' vague references to using BayCare's website for general health-related purposes do not specify any "substance" of a communication that was allegedly intercepted, and no Plaintiff describes the content of any message purportedly intercepted.

16

Crespi allegedly used BayCare's website to "seek physicians, specifically rheumatologists, to treat arthritis and other ailments." Am. Compl. ¶ 81. Forero allegedly used the site to "seek out a general practitioner physician." *Id.* ¶ 82. Davis claims she used the website to "search for locations, search for primary care physicians, and to schedule appointments." *Id.* ¶ 83. These generalized descriptions merely recite the subjects Plaintiffs were researching. They do not identify *what information* was allegedly transmitted, how any searches were conducted, or what specific communications—if any—revealed the "substance, purport, or meaning" of a message. As *Goldstein* makes clear, "[j]ust because Plaintiff intended to communicate with Defendant's website does not mean his communications revealed any substance." 559 F. Supp. 3d at 1322.

Without factual allegations describing the content of any intercepted communications, Plaintiffs cannot plausibly plead that their interactions with BayCare's public website qualify as "contents" under the FSCA. Courts analyzing similar claims under analogous statutes have reached the same conclusion. *See, e.g., Doe v. Upperline Health, Inc.*, No. 1:23-cv-01261, 2024 WL 4953503, at *3 (S.D. Ind. Sept. 24, 2024) (finding allegation that the plaintiff "used the Website to search for a podiatrist" insufficient to plead disclosure of protected information); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123, 1130 (S.D. Cal. 2023) (finding use of public website to "research . . . doctors," "look for providers," and "search for medical specialists" insufficient to support wiretap claim). Plaintiffs' assertions are no more specific and thus equally inadequate.

### 2.    *Plaintiffs fail to state a claim for violation of ECPA.*

To state an ECPA claim, a plaintiff must allege that the defendant "(1) intentionally (2) intercepted, endeavored to intercept[,] or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication (5) using a device." *Mohamad v. Central Fl. Tax and Accounting, Inc.*, No. 6:24-cv-23354-JSS-LHP, 2025 WL 2695116, at *5

17

(M.D. Fla. Sept. 22, 2025) (quoting *Hamilton Grp. Funding, Inc. v. Basel*, 311 F. Supp. 3d 1307, 1314 (S.D. Fla. 2018)). As courts analyze FSCA claims in the same manner as ECPA claims, Plaintiffs' ECPA claim necessarily fails for the same reasons their FSCA claim fails. It also fails for an independent reason: Plaintiffs do not plead any facts showing that BayCare "intercepted" any communication transmitted by Plaintiffs.

### i.      BayCare cannot intercept communications to which it is a party.

ECPA is a one-party consent statute. *Ramos v. Delphi Behav. Health Grp., LLC*, No. 21-11218, 2022 WL 1415856, at *1 (11th Cir. May 4, 2022) ("[I]t is lawful for an individual to intercept a communication if he is a party to it."); *see In re Nickelodeon*, 827 F.3d 262, 275 (3d Cir. 2016) (discussing "one party consent language in the Wiretap Act"). Under this "party exception," no liability attaches where the person intercepting the communication is "a party to the communication" or where "one of the parties to the communication has given prior consent." *Piedmont Healthcare*, 2024 WL 5284883, at *3 (quoting 18 U.S.C. § 2511(2)(d)).

Courts routinely apply this rule to dismiss ECPA claims premised on alleged web tracking. *See, e.g., Id.* at *4 (dismissing ECPA claim); *In re Nickelodeon*, 827 F.3d at 275 (dismissing ECPA claim because defendant "was either a party to all communications with the Plaintiff's computers or was permitted to communicate with the Plaintiff's computers by Viacom, who was itself a party to all such communications."); *In re Google Cookie Placement Consumer Privacy Litigation*, 806 F.3d 125, 142–43 (3d Cir. 2015) (dismissing ECPA claim because tracking cookies placed by advertising providers made the advertiser the intended recipient of the electronic transmission); *Allen v. Novant Health, Inc*., No. 1:22-CV-697, 2023 WL 5486240, at *4 (M.D.N.C. Aug. 24, 2023) (dismissing claim and noting that the "mere receipt of a communication does not constitute a violation").

18

Here, Plaintiffs allege that "BayCare has deliberately implemented the third-party Google Analytics Tracker and DoubleClick Tracker in the source code of its Website." Am. Compl. ¶ 50. To the extent Plaintiffs' website interactions constitute "communications" under ECPA, BayCare—indisputably a party to those communications—consented to them. Because one party to the communications consented, the party-consent exception bars ECPA liability.

### ii.      The crime-tort exception does not apply to Plaintiffs' claims.

Plaintiffs attempt to avoid ECPA's party-consent exception by asserting that BayCare was not acting under the color of law when it allegedly procured interceptions. *See* Am. Compl. ¶ 133. This effort is misplaced. The party exception is inapplicable only where the "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." *Piedmont Healthcare*, 2024 WL 5284883, at *3 (citing 18 U.S.C. § 2511(2)(d)). Courts interpret this crime-tort exception narrowly; the alleged criminal or tortious purpose "must be separate and independent from the act of the recording." *Planned Parenthood Fed'n of Am., Inc. v. Newman,* 51 F.4th 1125, 1136 (9th Cir. 2022). Thus, the relevant inquiry is whether the interceptor's *purpose*—the "intended use" of the information—was itself criminal or tortious, not whether the interception allegedly violated the statute. *Id*. The exception is narrowly construed and only applies where the defendant intends to use the information to "harm" the plaintiff, such as to "blackmail, threaten, or publicly embarrass the recorded party." *United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013). Plaintiffs' Amended Complaint contains no such allegations.

Plaintiffs also allege, in conclusory fashion, that BayCare intended to violate HIPAA and other privacy duties by "shar[ing] and monetize[ing]" users' "individually identifiable health information." Am. Compl. ¶¶ 42–46. But invoking HIPAA does not satisfy the crime-tort exception unless Plaintiffs plead facts supporting a plausible inference that BayCare's purpose in

19

procuring the alleged interceptions was to commit an independent criminal or tortious act, separate from the act of interception itself. *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022). Plaintiffs do not plead such facts, and they cannot bootstrap the exception by relabeling the alleged interception as its own "criminal or tortious" purpose.

To the contrary, the Amended Complaint alleges the opposite. Plaintiffs assert that BayCare implemented the tracking technologies to enhance its business operations, describing the alleged benefits as "detailed analytics about Website usage that inform its business and marketing decisions." Am. Compl. ¶ 76. These allegations foreclose any inference that BayCare's purpose was criminal or tortious. To invoke the crime-tort exception, a plaintiff must plead "sufficient facts to support an inference that the offender intercepted the communication *for the purpose of a tortious or criminal act* that is *independent of the intentional act of recording.*" *In re Google Cookie Placement*, 806 F.3d at 145 (emphasis added); *see also Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010) (same). Plaintiffs do not meet this standard.

Courts addressing web-tracking allegations routinely reject the crime-tort exception under indistinguishable circumstances. *See, e.g., Rodriguez v. Google LLC*, No. 20-cv-04688, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021) ("Alleged interceptions fall within the tort or crime exception only where the primary motivation or a determining factor in the interceptor's actions has been to injure plaintiffs tortiously . . . cannot apply where the interceptor's purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money"); *Doe v. Lawrence Gen. Hosp.,* No. 25-CV-10081-NMG, 2025 WL 2808055 (D. Mass. Aug. 29, 2025), report and recommendation adopted in relevant part, No. CV 25-10081-NMG, 2025 WL 2807673 (D. Mass. Sept. 30, 2025) (holding that "the crime-tort exception to the party exception is inapplicable to Plaintiff's ECPA claim" in pixel case); *McManus v. Tufts Med. Ctr., Inc.,* No. 25-CV-10008-ADB,

20

2025 WL 2778025 (D. Mass. Sept. 29, 2025) (same); *Katz-Lacabe v. Oracle America, Inc.*, 668 F. Supp. 3d 928 (N.D. Cal. 2023) (same). Because Plaintiffs plead no facts showing that BayCare acted with a criminal or tortious purpose independent of the alleged interception, their effort to circumvent the party-consent rule fails, and their ECPA claim fails.

### 3.    *Plaintiffs fail to state a claim for Breach of Confidence.*

A breach of confidence involves the "unconsented, unprivileged disclosure to a third party of nonpublic information that the defendant has learned within a confidential relationship." *Farmer v. Humana, Inc.*, 582 F. Supp. 3d 1176, 1189 (M.D. Fla. 2022) (quoting *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 932 (11th Cir. 2020)). Thus, a plaintiff must plausibly allege both (1) disclosure of nonpublic information and (2) the existence of a confidential relationship. *Muransky*, 979 F.3d at 932.

### i.    Crespi and Forero fail to allege a confidential relationship.

A confidential relationship exists only "where confidence is reposed by one party and a trust accepted by the other." *Hutson v. Brooks*, 646 So. 2d 276, 277 (Fla. 2d DCA 1994) (quoting *Traub v. Traub*, 102 So. 2d 157, 159 (Fla. 2d DCA 1958)). Plaintiffs assert generally that "[m]edical providers have a duty to their patients" (Am. Compl. ¶ 136), and they held "reasonable expectations of privacy in their communications exchanged with BayCare" (*id.* ¶ 137). Crespi and Forero do not allege they are, or ever have been, BayCare patients. *See id.* ¶¶ 82–83. They allege only that they browsed BayCare's publicly accessible website. Such passive website use does not create the kind of relationship in which one party "accepts" the other's trust. Because Crespi and Forero allege no patient relationship with BayCare, they fail to plead a confidential relationship.

### ii.    Plaintiffs fail to allege disclosure of confidential information.

Plaintiffs also fail to allege that BayCare disclosed any confidential information. They claim only that they used BayCare's website to search for locations and physicians. Am. Compl.

21

¶¶ 81–83. But browsing history on public-facing web pages does not make such information confidential or protected health information. *See Smith v. Facebook*, 262 F. Supp. 3d 943, 954–55 (N.D. Cal. 2017), aff'd, 745 F. App'x 8 (9th Cir. 2018) (browsing history on a website did not disclose PHI because "[t]hese pages contain general health information that is accessible to the public at large").

Plaintiffs' browsing history on BayCare's public website is no different. Such interactions do not reveal private medical information, do not reflect confidential communications, and do not transform publicly available website activity into nonpublic information for purposes of a breach of confidence claim. Plaintiffs therefore fail to plead the essential elements of disclosure of confidentiality, and their claim should be dismissed.

> 4.    *Plaintiffs consented to the dismissal of their invasion of privacy claim.*

During the Parties' February 27, 2026, meet and confer regarding BayCare's Motion, Plaintiffs agreed to the dismissal of their invasion of privacy claim without prejudice.

> 5.    *Plaintiffs consented to the dismissal of their breach of implied contract claim.*

During the Parties' February 27, 2026, meet and confer regarding BayCare's Motion, Plaintiffs agreed to the dismissal of their breach of implied contract claim without prejudice.

> 6.    *Plaintiffs fail to state a claim for Unjust Enrichment.*

"Under Florida law, a claim for unjust enrichment requires that: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant accepted or retained the benefit; and (4) the circumstances are such that 'it would be inequitable for the defendant to retain the benefit without paying fair value for it.'" *Steven L. Steward & Associates, P.A. v. Truist Bank*, No. 6:20-cv-1083, 2020 WL 5939150, at *2 (M.D. Fla. Oct. 6,

2020) (citation omitted). Plaintiffs' claim fails for two reasons: unjust enrichment cannot be predicated on alleged wrongful conduct, and Plaintiffs fail to allege how BayCare was enriched.

### i.       Unjust enrichment cannot be based on allegations of wrongful conduct.

Florida law is clear that unjust enrichment cannot rest on alleged tortious or wrongful conduct. *See State Farm Mut. Auto. Ins. Co. v. Lewin*, 535 F. Supp. 3d 1247, 1266 (M.D. Fla. 2021) ("A claim of unjust enrichment may not be predicated on a wrong committed by a defendant."); *Electrostim Med. Servs., Inc. v. Lindsey,* No. 8:11-cv-2467, 2012 WL 1560647, at *4 (M.D. Fla. May 2, 2012) ("Where a plaintiff predicates their unjust enrichment claim on wrongful conduct of a defendant, then the plaintiff's right of recovery, if any, arises from the wrong of the alleged tort rather than unjust enrichment.").

Yet Plaintiffs' unjust enrichment claim is based entirely on the same alleged wrong that underlies their FSCA, ECPA, and intrusion-upon-seclusion claims—namely, the supposed unauthorized "interception" of their data. *Compare* Am. Compl. ¶¶ 150–51 (unjust enrichment), *with id*. ¶ 144 (intrusion upon seclusion), *and id*. ¶ 122 (ECPA). Plaintiffs identify no independent enrichment-based theory of liability separate from these alleged statutory and tort violations. Courts dismiss unjust enrichment claims in precisely these circumstances. *See Lewin*, 535 F. Supp. 3d at 1267 (dismissing claim and noting that "[t]he Court cannot differentiate this wrong from the other torts alleged in this complaint."); *Pop v. LuliFama.com LLC*, No. 8:22-CV-2698-VMC-JSS, 2024 WL 1194485, at *6 (M.D. Fla. Mar. 20, 2024), *aff'd*, 145 F.4th 1285 (11th Cir. 2025) (same). Because Plaintiffs' theory rests entirely on alleged wrongful conduct, it cannot sustain an unjust enrichment claim.

### ii.       Plaintiffs fail to allege how BayCare was enriched.

Even if their claim was otherwise cognizable, Plaintiffs fail to plead that they conferred any benefit on BayCare. Plaintiffs assert only that "BayCare has received a benefit from Plaintiffs."

Am. Compl. ¶ 150. This bare assertion is unsupported by facts explaining the benefit, how BayCare accepted it, or why retaining it would be inequitable.

Plaintiffs do not allege that they provided BayCare with an economic or tangible benefit. Their only allegation is that BayCare purportedly used their website interactions for "business purposes, including marketing and advertising analytics." Am. Compl. ¶ 151. Such vague references to "commercial gain" or "business purposes" are insufficient. *See, e.g., In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. 19-MD-2904, 2021 WL 5937742, at *18 (D.N.J. Dec. 16, 2021) (finding allegations of general "commercial gain" insufficient); *Shofur LLC v. Fitzpatrick*, No. 1:20-CV-01267-SCJ, 2021 WL 8648884, at *5 (N.D. Ga. Sept. 8, 2021) (same).

Plaintiffs do not allege any facts showing that BayCare profited, received money, or otherwise obtained anything of value from Plaintiffs. Their conclusory allegation that BayCare somehow benefited from their web browsing is insufficient to support an unjust enrichment claim, and their claim should be dismissed.

## V.    CONCLUSION

For the foregoing reasons, BayCare respectfully requests this Court dismiss Plaintiffs' claims.

**<u>LOCAL RULE 3.01(g) CERTIFICATION</u>**

I hereby certify that the undersigned counsel conferred with Plaintiffs' counsel regarding this motion on February 27, 2026, by telephone. Plaintiffs consent to the dismissal of their invasion of privacy and implied contract claims, but do not consent to the remaining requested relief.

Respectfully submitted this 4th day of March, 2026.

/s/ *Starr T. Drum*_____
Starr T. Drum, Florida Bar No. 0088866
Xeris E. Gregory (*pro hac vice*)
POLSINELLI PC
2000 SouthBridge Parkway, Suite 301
Birmingham, Alabama 35209
Telephone: (205) 963-7136
sdrum@polsinelli.com
xgregory@polsinelli.com

*Counsel for BayCare Health System, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2026, I electronically filed the foregoing using the Court's

CM/ECF system, which will send notice of such filing to all counsel of record.

/s/ *Starr T. Drum*_____
Starr T. Drum
Florida Bar No.: 0088866

25