**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

LUIS ANGEL HEREDIA CRESPI,            )
LYNETTE DAVIS, and MARTIN             )
FORERO, individually and on behalf of all   )
others similarly situated,                 )
                                      )
        Plaintiffs,                     )
                                      )     Case No. 8:25-cv-02245-WFJ-NHA
                                      )
v.                                    )
                                      )
BAYCARE HEALTH SYSTEM, INC.,          )
                                      )
        Defendant.                      )

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS**
**PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**

BayCare Health System, Inc. ("BayCare") submits its reply in support of its Motion to Dismiss Plaintiffs' Amended Complaint ("BayCare's Motion") (ECF No. 27).

## I.    INTRODUCTION

Plaintiffs' Response (ECF No. 30) does not cure the jurisdictional and pleading defects identified in BayCare's Motion. Rather than showing that any Plaintiff suffered a concrete injury fairly traceable to BayCare, Plaintiffs rely on generalized assertions and unavailing case law. Plaintiffs' Amended Complaint still fails for lack of Article III standing. And although Plaintiffs have rightly voluntarily abandoned their invasion-of-privacy and breach-of-implied-contract claims, they still fail to plausibly allege violations of FSCA/ECPA, breach of confidence, or unjust enrichment. These deficiencies are fatal to their suit.

## II.    ARGUMENT

### A.    Plaintiffs lack Article III standing to sue BayCare.

#### 1.    *Plaintiffs' alleged statutory violations, invasion of privacy, and loss of data value are not injuries in fact.*

Plaintiffs do not dispute that their conclusory allegations of a "chilling effect" and "risk of future harm" do not establish an injury in fact. *See* Resp. at 10. Plaintiffs instead argue they have established injury-in-fact based on their allegations of (1) statutory violations, (2) invasion of privacy, and (3) "loss of data value." *Id*. at 6–9.

*First*, Plaintiffs' contention that their alleged statutory violations "alone" are sufficient for Article III standing (Resp. at 6–7) is not only incorrect, but also conflicts with their separately acknowledged concession that a statutory violation creates standing only so long as it "'(1) inflicts some separate concrete harm on the plaintiff or (2) creates a material risk of such harm to the

1

plaintiff.'"[1] Resp. at 5. That concession is fatal to Plaintiffs' argument; a statutory cause of action does not dispense with the constitutional requirement to plead a concrete, real-world injury. *See* Mot. at 6; *Walters v. Fast AC, LLC,* 60 F.4th 642, 648 (11th Cir. 2023); *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020). The Eleventh Circuit and the United States Supreme Court require more than mere allegations of statutory noncompliance. But here, Plaintiffs have alleged nothing more than bare statutory violations.

Plaintiffs attempt to rely on *Sanders v. Global Radar Acquisition, LLC*, No. 2:18-cv-555, 2019 WL 118044 (M.D. Fla. Jan. 7, 2019). *See* Resp. at 5–6. But *Sanders* is a nonbinding and unpublished, pre-*TransUnion* (and *Walters* and *Muransky*) decision addressing a different statutory framework and different alleged harms. Plaintiffs cannot bypass *TransUnion* (which the Response ignores entirely) and the requirement to demonstrate separate concrete harm by relabeling alleged statutory noncompliance as a constitutional injury. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) ("[U]nder Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court.").

*Second*, Plaintiffs' argument that their alleged statutory violations constitute an "invasion of privacy" sufficient for standing (Resp. at 7–9) does not address the central issue because Eleventh Circuit authority requires Plaintiffs to allege a harm with a close relationship to a traditionally recognized tort <u>and</u> the essential elements that make the alleged harm comparable. *See Drazen v. Pinto*, 74 F.4th 1336, 1343 (11th Cir. 2023) (noting that comparative harms are "too attenuated" and therefore there is no standing where a plaintiff "completely fails to allege an

---

[1] Plaintiffs' Response cites *Green-Cooper v. Brinker International, Inc.*, 73 F.4th 883, 889 (11th Cir. 2023); however, the language quoted in Plaintiffs' response is from *Walters v. Fast AC, LLC*, 60 F.4th 642, 648 (11th Cir. 2023).

element essential to the harm set out as a common-law comparator").

Plaintiffs failed to plausibly allege the essential elements—a highly offensive intrusion into a private place—of an intrusion-upon-seclusion claim to make their alleged harm comparable. *See* Mot. at 8–9. Indeed, Plaintiffs have now voluntarily dismissed their intrusion upon seclusion claim (Resp. at 12, n.1), underscoring that they are not proceeding on (and cannot plead) the invasion of privacy claim they attempt to rely on as an analog.

Plaintiffs argue they have standing because they have "similarly shown harms that share a close relationship" by alleging "(1) an intentional intrusion by Bay[C]are; (2) into the solitude and seclusion of their communications regarding private health information; (3) that Bay[C]are disclosed to third parties without Plaintiffs' consent" and received advertisements, which is "offensive to some degree to a reasonable person" (Resp. at 9), but Plaintiffs miss the point because they have not *plausibly* alleged any of these things under Florida law. *See* Mot. at 7–9.

There cannot be an "intentional intrusion" where the alleged intrusion is into a private activity, not a private place. *Id.* at 8; *Hammer v. Sorensen*, 924 F. App'x 689, 695 (11th Cir. 2020) (noting Florida law requires intrusion into a private place, not simply into personal affairs). Plaintiffs' online browsing activity is, at most, an alleged private activity. *See* Mot. at 8; *W.W. v. Orlando Health, Inc.*, No. 6:24-cv-1068, 2025 WL 722892, at *9 (M.D. Fla. Mar. 6, 2025) (finding web tracking allegations to be an alleged intrusion into private activities, rather than a private place). And an alleged intrusion cannot be "highly offensive" where the alleged conduct is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." Mot. at 8–9 (quoting *Celestine v. Capital One*, No. 117-20237, 2017 WL 2838185, at *4 (S.D. Fla. June 30, 2017)). Plaintiffs' assertion that the alleged intrusion was "offensive to *some degree*" (Resp. at 9 (emphasis added)) is a far cry from the outrageousness needed for an intrusion upon

3

seclusion. On the facts alleged, Plaintiffs describe routine use of a public-facing website without pleading facts showing an intrusion into a private place that is highly offensive. *See* Mot. at 7–9. Plaintiffs' "invasion of privacy" theory, therefore, does not supply an injury in fact.

*Third*, Plaintiffs' argument that they suffered an injury-in-fact because their information allegedly has "value" and because BayCare and/or Google allegedly "profit" from it (Resp. at 9–10) remains too speculative and conclusory to establish injury. Plaintiffs' Response conflates who allegedly profited and how: the Amended Complaint's theory is that Google uses data for advertising, but Plaintiffs do not plead facts showing BayCare obtained money or any concrete economic benefit from Plaintiffs. *See* Mot. at 23–24. And "loss of data value" is not a concrete injury where Plaintiffs do not allege an actual market in which they participated (or plausibly intended to participate), or facts showing any diminution in value attributable to the alleged conduct. *Id*. at 9–10. Plaintiffs still do not allege those facts, so "loss of data value" cannot establish standing.

### 2.    *Plaintiffs' traceability theory is too speculative.*

Plaintiffs' traceability theory rests purely on speculation: they infer that BayCare "intentionally implemented trackers," "took" Plaintiffs' information, transmitted it to Google, and that "proof" of disclosure exists because Crespi later "observed advertisements" related to his medical conditions. Resp. at 10–12. Plaintiffs' theory is a "speculative chain of possibilities" insufficient under Article III. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Two Plaintiffs do not allege any downstream effects at all (Am. Compl. ¶¶ 82–83), and Crespi does not plead any facts to connect any advertisement he observed to BayCare (*id*. ¶ 81).

### B.    **Plaintiffs fail to state a claim upon which relief can be granted.**

Plaintiffs' Response relies heavily on *W.W. v. Orlando Health, Inc.*, in an attempt to avoid the material deficiencies in the Complaint. But *W.W.* is not "nearly identical" (Resp. at 14) because

4

it turned on a materially different record at the pleading stage—notably, W.W.'s use of a patient portal and detailed allegations about specific submissions, communications, and resulting targeted ads. Here, Plaintiffs allege only generalized website browsing and conclusory assertions that unspecified information was transmitted to Google. Their allegations do not plausibly satisfy the elements of any remaining claim.

1. *Plaintiffs' reliance on W.W. does not overcome their failure to plead facts plausibly demonstrating a violation of the FSCA.*

Plaintiffs' FSCA argument rests almost entirely on *W.W.* (Resp. at 13–21), but *W.W.* is fact-bound and distinguishable. There, W.W. was a patient and alleged detailed, patient-specific communications and submissions through a patient portal. *See* Complaint, ¶¶ 100–01, *W.W. v. Orlando Health, Inc.*, No. 6:24-cv-01068 (M.D. Fla. June 10, 2024), ECF No. 1. W.W. provided screenshots, including Facebook activity reports and from her patient portal, showing third parties that accessed her information. *See id.* ¶¶ 103-04. The court's determination that W.W. plausibly alleged an interception was based on a "myriad of factual details." 2025 WL 722892, at *5.

By contrast, Plaintiffs here (i) do not identify the specific pages they visited, (ii) do not allege they entered the kinds of search terms featured in their Amended Complaint's examples, and (iii) do not plausibly allege what "contents" of any electronic communication were contemporaneously acquired. Crespi and Forero allege only that they used BayCare's public website to locate physicians, and Davis alleges scheduling activity in general terms—without pleading actual facts of what was input, where it was input, and how such information was intercepted in flight. *See* Compl. ¶¶ 81–83. These allegations are a far cry from the detailed factual allegations found sufficient in *W.W.*

Plaintiffs' Response essentially repeats the conclusion that "contents" were intercepted and transmitted (Resp. at 18–20), but Rule 8 requires factual allegations that make a conclusion

5

plausible as to *these* Plaintiffs, not hypothetical examples or generalized descriptions of what tracking tools might capture in other scenarios.

Plaintiffs miscast BayCare's discussion of *Jacome*/*Goldstein* as a technology comparison they can avoid because the tracking tools at issue here are "different." Resp. at 16. BayCare's point is simpler: regardless of the tracking technology alleged, Plaintiffs must individually plead facts showing the statute's required elements, including what qualifying "contents" were allegedly acquired and how. Plaintiffs did not do so, which is fatal to their FSCA claim.

      2.      *Plaintiffs fail to show that the "crime-tort" exception applies to an alleged ECPA violation.*

Plaintiffs argue that the ECPA one-party consent rule is overcome by the crime-tort exception because BayCare allegedly intercepted communications "with the intent[] to share and monetize" information in violation of HIPAA. *See* Resp. at 21. Plaintiffs again cite *W.W.* as "nearly identical." *Id.* But *W.W.* does not establish that the crime-tort exception *automatically* applies whenever a plaintiff alleges interception plus a generalized "monetization" motive. Nor does it relieve Plaintiffs of their obligation to plead facts plausibly showing an alleged interception was undertaken for an independent criminal or tortious objective.

Plaintiffs' theory improperly collapses the crime-tort exception into the alleged interception itself, and their reliance on *Stein v. Edward-Elmurst Health*, No. 23-CV-14515, 2026 WL 594752 (N.D. Ill. Mar. 3, 2026) is misplaced. Plaintiffs first contend that BayCare's use of tracking or analytics tools for marketing and advertising constitutes the criminal objective, but that alleged objective is not *independent* of the alleged interception. *See* Resp. at 21 (citing Am. Compl. ¶ 45). The exception requires a purpose *separate* from the alleged wrongdoing, which is absent here. *See* Mot. at 19–20; *T.D. v. Piedmont Healthcare, Inc.*, No. 1:23-cv-5416, 2024 WL 5284883, at *3 (N.D. Ga. Dec. 10, 2024) (collecting cases); *Caine v. Sturdy Mem. Hosp., Inc.*, No. 25-cv-

10261, 2026 WL 673483, at *3 (D. Mass. Mar. 10, 2026) (disagreeing with *Stein* and noting that "to state a claim under the ECPA's crime-tort exception, [a plaintiff] must plead facts showing that [the defendant] purposefully—not merely knowingly or negligently—committed criminal or tortious acts.").

Plaintiffs also rely on an alleged HIPAA violation as a predicate for the crime-tort exception, arguing that the violation arises from BayCare's "act of intercepting the Plaintiffs' private health information" and from BayCare's "disclosure and transmission of the individually identifiable health information gathered from that interception to a third party." Resp. at 22. To rely on the crime-tort exception in § 2511(2)(d), Plaintiffs must first plausibly allege that BayCare purposefully acquired Plaintiffs' personal information without authorization. *See Sturdy Mem. Hosp.*, 2026 WL 673483, at *4. However, there are no facts in the Amended Complaint that could support any inference that BayCare purposefully acquired Plaintiffs' PHI without authorization. Plaintiffs cannot bootstrap an ECPA claim onto conclusory HIPAA allegations. *See T.D.*, 2024 WL 5284883, at *3–4 (finding crime-tort exception inapplicable where a plaintiff alleged the defendant intended to violate HIPAA because the defendant's "primary motivation was to make money, not to injure plaintiffs tortiously"). Plaintiffs' ECPA claim should therefore be dismissed.

> 3. *Plaintiffs have not plausibly alleged a confidential relationship or disclosure of nonpublic information to state a breach-of-confidence claim.*

Plaintiffs' Response again depends on *W.W.* (Resp. at 23), but Plaintiffs have not plausibly alleged the elements of a breach of confidence claim. *First*, no confidential relationship is pleaded for Crespi or Forero. They do not allege a physician-patient relationship with BayCare; they allege only that they browsed a public-facing website to locate physicians. Compl. ¶¶ 81–82. That is not a mutual relationship "where confidence is reposed by one party and a trust accepted by the other." *Hutson v. Brooks*, 646 So. 2d 276, 277 (Fla. 2d DCA 1994). *Second*, even as to Davis (the only

Plaintiff who alleges a patient relationship), she still fails to plead a *nonconclusory* disclosure of nonpublic information to a third party. *See* Mot. at 21–22. Plaintiffs' "proof" relies on Crespi's alleged receipt of unspecified advertisements at an unspecified time on an unspecified platform. *See* Resp. at 12. It is not a plausible allegation that BayCare disclosed confidential information. Plaintiffs failed to plead a qualifying relationship for two of the three Plaintiffs and a plausible disclosure of nonpublic information for any Plaintiff, and their breach-of-confidence claim should be dismissed.

> 4.    *Plaintiffs' conclusory allegations of a benefit are insufficient to state a claim for unjust enrichment.*

Plaintiffs theorize that BayCare received "business" or "marketing" value from website interactions. Resp. at 25. But Plaintiffs do not allege facts to show a concrete transaction in which they paid BayCare, provided something of measurable value in exchange for a promise, or suffered a corresponding deprivation. Instead, they simply provide conclusory allegations that BayCare was "enriched" by Plaintiffs' browsing activity. *See OJ Commerce, LLC v. Ashley Furniture Indus., Inc.*, 817 Fed. App'x 686 (11th Cir. 2020) ("Plaintiff's conclusory allegations of a conferred benefit, unsupported by specific factual allegations, do not state a claim for unjust enrichment.").

For the foregoing reasons, BayCare respectfully requests that this Court dismiss Plaintiffs' claims with prejudice.

Respectfully submitted this 15th day of April, 2026.

/s/ *Starr T. Drum*_____
Starr T. Drum, Florida Bar No. 0088866
Xeris E. Gregory (*pro hac vice*)
POLSINELLI PC
2000 SouthBridge Parkway, Suite 301
Birmingham, Alabama 35209
sdrum@polsinelli.com
xgregory@polsinelli.com

*Counsel for BayCare Health System, Inc.*

8

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 15, 2026, I electronically filed the foregoing using the Court's

CM/ECF system, which will send notice of such filing to all counsel of record.

/s/ *Starr T. Drum*
Starr T. Drum
Florida Bar No.: 0088866